**Ted MARTIN, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, Secretary of the Department of Health and Human Services, Defendant–Appellee.**

**No. 88–6249.**

United States Court of Appeals, Eleventh Circuit.

March 1, 1990.

Lyle D. Lieberman, Miami, Fla., Ronald J. Feibus, Roswell, Ga., for plaintiff-appellant.

Dexter W. Lehtinen, U.S. Atty., Miami, Fla., Dennis R. Williams, Office of the General Counsel, DHHS, Atlanta, Ga., Suzann Ponzoli, Asst. U.S. Atty., for defendant-appellee.

Before FAY and KRAVITCH, Circuit Judges, and THOMPSON *, District Judge.

FAY, Circuit Judge:

This case establishes for the Eleventh Circuit the standards for piercing the veil of fictitious family salary arrangements for the purpose of obtaining Social Security benefits. Specifically, we must determine if plaintiff-appellant Ted Martin was retired from his closely held family corporation on January 1, 1985. Following appropriate proceedings by the Social Security Administration (SSA), the Secretary of Health and Human Services (Secretary) concluded that Martin was not eligible for Social Security payments because he was not retired as he had claimed. Pursuant to Martin's requested review of the denial of Social Security benefits, the district court upheld the decision of the Secretary. This appeal ensued. From our review of the Secretary's findings of fact and conclusions of law, we also have determined that Martin was not retired, and therefore not entitled to Social Security benefits. Accordingly, we affirm.

## I. FACTS: TRYING TO DANCE TO THE BEAT OF THE MUSIC MAN

### A. Overture

Martin, born November 25, 1921, has been a self-employed musician and bandleader throughout his working life. Ultimately, he managed his own band-orchestra business, which included hiring musicians and soliciting bookings for musical engagements. Martin operated his sole proprietorship from his home in North Miami Beach, Florida. His wife performed clerical duties. She has no recollection of whether or not she was paid for her services while Martin's music business was a sole proprietorship. R1–5–43.

On September 14, 1982, Martin incorporated his music business as Ted Martin Enterprises, Inc., for the express purpose of obtaining retirement benefits. R1–5–31. The address of the corporation remained the Martin residence. Martin was president and his wife was secretary-treasurer. They were the directors and each owned fifty percent of the corporate stock. After incorporation, Martin continued to manage the music business and his wife remained responsible for clerical duties. The corporate tax return for fiscal year 1982, September 14, 1982 to August 31, 1983, shows gross receipts of $186,683.00, with Martin's

---

* Honorable Myron H. Thompson, U.S. District Judge for the Middle District of Alabama, sitting by designation.

full-time salary as $22,254.00 and his wife's part-time salary as $5,215.00. R1–5–156–57.

## B. The First Tune

Martin filed his first claim for retirement benefits with the SSA on September 28, 1983. R1–5–53–56. He stated that his total earnings in 1982 were $35,886.00 and that his expected earnings in 1983 and 1984 would be $24,000.00 and $5,000.00, respectively. R1–5–53, 55. Therefore, he claimed that he would be retired effective January 1, 1984, with monthly earnings in 1984 of no more than $430.00. R1–5–55. Martin's statement to the SSA represented that, when he retired in 1984, he would do "less actual work," but that he would "continue making all major decisions." R1–5–111.

In response to an SSA contact, Martin represented that his wife would assume the duties of booking engagements, but he also conceded that she merely obtained information over the telephone and that he remained the decision maker regarding bookings. R1–5–57–58. The contact report concluded that Martin had failed to prove his intention of future retirement, and that his retirement appeared "remote." R1–5–58. The SSA Special Determination, issued on October 11, 1983, denied retirement benefits to Martin because he had not established his retirement or reduction in work activity.[1] Martin did not appeal this SSA determination.

## C. Same Song, Second Verse

On January 5, 1984, Martin filed his second application for retirement benefits with the SSA. R1–5–60–63. Therein, he stated that his total earnings for 1982 were $21,000.00, and that his expected earnings for 1983 and 1984 would be $19,000.00 and $2,000.00, respectively. R1–5–62. Thus, Martin again claimed that he would retire effective January 1, 1984, earning no more than $430.00 a month in 1984. R1–5–62. In response to the application question asking if he had "ever filed an application for Social Security benefits," Martin answered "No." R1–5–60. The SSA contact report shows that Martin had not supported his claims of reduction in his corporate income and services, and that his intention to make his wife corporate president was "absurd," since she was not a musician and performed "very little meaningful work" in the business. R1–5–64.

The SSA Special Determination again denied retirement benefits to Martin because he had not verified his reduction in services.[2] Martin did not appeal this SSA decision. By letter on January 12, 1984, the SSA reminded Martin that he had filed a claim for retirement benefits in September, 1983, and that his second application would be treated as a duplicate claim; therefore, no action would be taken on the second request. R1–5–67. The SSA contact report on January 17, 1984, documents Martin's failure to provide information for a current and future earnings determination as follows: "It appears apparent that W/Es [wage earner's] sole intent is to

---

1. In pertinent part, the SSA Special Determination states:

    DETERMINATION:
    It appears Mr. Martin incorporated to avoid having to report the business net profit solely to his record. By incorporating, he has the capability of paying the earnings via other means, i.e. salaries to family members, dividends, rents or loan repayments, unusual and not satisfactorily explained business expenses, etc.
    Benefits cannot be paid until his retirement allegation is established and this cannot be verified in advance of the event. Only when Mr. Martin has furnished proof of his retirement or reduction in work activity can benefits be paid. An estimate of $24,000 is estab-

lished for 1984, based on his 1983 estimate of earnings.
SSA Special Determination (Oct. 11, 1983). R1–5–59.

2. In pertinent part, the SSA Special Determination states:

    DECISION:
    Inasmuch as nothing Mr. Martin has claimed in the way of reduction in services can be verified at this time, he is being placed in QR status and assessed the same rate of earnings for 1984 as he had in 1983 ($19,000). At the end of the year when personal and corporate tax returns are available, perhaps proof can be obtained to support his allegations.
SSA Special Determination (Jan. 11, 1984). R1–5–66.

avoid work deductions to get his payments. He is indefinite as to what he will earn and only states that it will (his earnings) be under the allowed amount since he knows payments could be initiated by saying so." R1–5–68. The corporate tax return for 1983, September 1, 1983 to August 31, 1984, shows gross receipts of $236,742.00 and Martin's full-time salary as $7,200.00 and his wife's part-time salary as $16,-800.00. R1–5–148–49.

### D. A Different Melody

The corporate tax return for 1984, September 1, 1984 to August 31, 1985, shows gross receipts of $213,142.00, Martin's full-time salary as $4,050.00, and his wife's part-time salary as $9,250.00. R1–5–171–72. On September 9, 1985, Martin's counsel sent to the SSA requested corporate tax returns for fiscal years 1982 and 1983, and the Martins' personal tax return for 1984. R1–5–124. Additionally, the corporate minutes of January 7, 1985 were enclosed in order to substantiate the change in corporate officers and Martin's retirement. Those minutes show that, effective January 7, 1985, Martin's wife became the new president of the corporation at a salary of $150.00 per week and that Martin became the new vice president-secretary at a salary of $100.00 per week. R1–5–130.

On November 22, 1985, the SSA issued a Special Determination that Martin was not entitled to retirement benefits because the wages proportioned to him and his spouse were not commensurate with their respective value to the corporation.[3] This determination was communicated to Martin in a letter dated November 26, 1985. R1–5–72. The letter also informed Martin that he could request reconsideration within sixty days as well as submit additional evidence.

On December 9, 1985, Martin requested a SSA hearing and stated his disagreement with the SSA determination as to his retirement as follows: "The value of my 1984 wages are irrelevant. I am alleging retirement since January 1, 1985. I am not alleging retirement at any time between November 25, 1983, upon attaining age 62, and December 31, 1984." R1–5–73. Therefore, Martin changed his song from his two previous, unsuccessful applications for retirement benefits by abandoning his prior claims of retirement on January 1, 1984, and asserting a new retirement date of January 1, 1985.[4]

On January 21, 1986, an administrative law judge in the SSA Office of Hearings and Appeals dismissed Martin's request for a hearing as premature, since he had not requested and obtained the requisite reconsidered determination. R1–5–76. Martin further was advised that, if he disagreed with the dismissal of his hearing request, then he had the right to request the Appeals Council to review the decision within sixty days. R1–5–75. On January 23, 1986, Martin's counsel completed a SSA Request for Reconsideration application, alleging Martin's retirement as of January 1, 1985. R1–5–78.

The SSA Reconsideration Review Section independently reviewed the evidence upon which the original SSA determination of Martin's ineligibility for retirement benefits was based. In affirming the initial decision, the Reconsideration Determination, issued on April 15, 1986, carefully detailed the record examination and reasoning under the applicable regulations. R1–5–80–85. The Reconsideration Determina-

---

**3.** In pertinent part, the SSA Special Determination states:

DETERMINATION:
The reduction in band bookings in 1984 appears reasonable, as does the reduction in total earnings to $24,000.00. However, the proportion of wages paid to the NH as musician/bandleader, and to his spouse as clerk/bookkeeper is not commensurate with their respective value to such a business, and is not supported by the evidence submitted. It is therefore determined that the NH's 1984

wages for deduction purposes is $20,000.00, and "QR" status continues.
SSA Special Determination (Nov. 22, 1985). R1–5–71.

**4.** Appellant's brief summarizes the issue in this case as being the application of retirement benefits commencing in 1985, and states that "[a]ppellant concedes that he *unsuccessfully* attempted to secure retirement insurance for 1984, and that no benefits are payable prior to 1/1/85." Appellant's Brief at 12–13 (emphasis in original).

tion explains the close SSA scrutiny required when an individual arranges his business affairs to acquire Social Security benefits that he would not obtain otherwise:

> There is no question that an individual is free to arrange his business affairs in any way he wishes even if his purposes [sic] is to thereby gain greater Social Security benefits than would otherwise be available. However, where it is apparent that an individual has acted with this particular purpose in mind, it is incumbent upon the Secretary to closely scrutinize the transaction and subsequent relationship of the parties involved to assure that that purported method of operation is one of substance and not merely form. It is well established that where the Secretary finds that the realities of the situation [sic] do not accord with the alleged arrangements, the parties are to be treated as reality dictates. Detemination [sic] of an indivdual's [sic] earnings for Social Security purposes must be related to the reality of his connection with the labor market and cannot be based on paper allocation of income.

> It is incumbent upon the Administration to apply strict standards and to closely scrutize [sic] transactions of individuals who are in a postion [sic] of influence or control of the amount of earnings reported for services rendered.

Reconsideration Determination at 2. R1–5–81.

The Reconsideration Determination contrasts the representations evidencing his retirement that Martin made to the SSA with the business realities that the internal investigation revealed. Martin stated that he was not performing as often as he had before 1985, that he worked fifteen to twenty hours per month in 1985 as opposed to that amount of time per week previously, and that his salary as vice president-secretary was $100.00 per week, while his wife earned $150.00 weekly as president. Martin's corporate tax returns, however, show gross receipts of $236,742.00 during fiscal year 1983 and gross receipts of $213,142.00 for fiscal year 1984. Since the 1984 fiscal year included eight months of 1985, when Martin claimed that he had curtailed his business activities, the Reconsideration Determination concludes that the slight decrease in gross earnings in the 1984 fiscal year compare with the previous year indicated that Martin's business activities and income had not declined significantly. R1–5–83.

Martin also represented to the SSA that neither he nor his wife solicited business, and that bookings were arranged by the party who hired the band with whom he and his wife had no dealings. The business expenses for the 1984 fiscal year, however, show telephone expenses of $1,076.00, travel and entertainment costs $4,028.80, gifts to clients of $735.00, office expenses of $4,318.00, and stationery and printing costs of $204.00. *Id.* These expenses indicated to the SSA that Martin actively solicited business. Furthermore, Martin informed the SSA that he had no suppliers since the musicians purchased their instruments and clothing. Nevertheless, the 1984 corporate tax return reveals payments of $1,549.00 for costumes and accessories and $401.00 for entertainment supplies. *Id.*

Additionally the Reconsideration Determination analyzes the corporate tax returns, showing the salaries of Martin and his wife. The 1982 return shows Martin's salary as $22,254.00 and his wife's compensation as $5,215.00, the 1983 return shows Martin's salary as $7,200.00 and his wife's pay as $16,800.00, and the 1984 return shows Martin's full-time salary as $4,050.00 and his wife's part-time earnings as $9,250.00. In affirming the initial SSA determination, the Reconsideration Determination concludes that Martin had shifted a significant portion of his salary to his wife, that the value of his services was more than his salary represented because his duties had remained the same, and that he was in a position to control the amount of his earnings.[5]

---

**5.** The Reconsideration Determination contains the following summary and conclusions pursu-

ant to the review of Martin's file:

### E. The Hearing: Martin Sings the Blues

Martin filed a hearing request on April 28, 1986, and claimed that he disagreed with the SSA reconsidered determination because he was "retired." R1–5–86. The hearing to determine if Martin was retired on January 1, 1985, was held on July 3, 1986, before an administrative law judge. R1–5–17–52. In the hearing, Martin acknowledged that he managed the business, made the business decisions, arranged the bookings, determined the corporate salaries, and did promotional work. R1–5–25, 27, 34–35, 38. Yet, he stated that he worked in the business five to ten hours a week. R1–5–36. He testified that his wife's responsibilities remained the same after incorporation. R1–5–34. Nevertheless, they each received a salary of $400.00 per month after January, 1985. R1–5–36.

Martin explained the diminished bookings, fifteen to eighteen a month prior to January, 1985, compared with eight or nine per month after that date, as a reflection of the times and the general preference for younger bands playing rock music. R1–5–25, 27. Martin testified that he directed or played with the band on seven or eight bookings a month, or approximately twenty-five to thirty-five hours a month for which he was paid $60.00 per hour. R1–5–39–40. This money earned by Martin was in addition to his monthly corporate salary. R1–5–48. Martin estimated that, for $100,000.00 gross income per year, he would make $10,000.00 to $15,000.00 net profit. R1–5–48–49. Martin also testified that the corporation had $80,000.00 in retained earnings, which he planned to invest in his retirement plan. R1–5–36–37.

Although his wife became the corporate president on January 1, 1985, she did not mention any management responsibilities when she testified as to her corporate duties. She stated that her "office work," performed at home, consisted of paper work, the payroll and computer work. R1–5–43–45. While she did the "banking," or made the deposits, she was unable to approximate the corporate gross income for the then current fiscal year, commencing September 1, 1985. R1–5–45–46. She also could not estimate the percentage that business was "down" for that year from the previous year. *Id.*

The administrative law judge issued his decision on November 25, 1986. R1–5–11–16. He reviewed Martin's various applications and representations in order to receive Social Security benefits as well as the applicable law and regulations. The decision contains the following reasoning and conclusions regarding Martin's alleged "retirement:"

> It is the intent of the Social Security Act that a potential beneficiary be retired within the meaning of such Act to be eligible for full monthly cash benefits. Similarly, it must also be recognized that the Administration has the authority, and

> It appears that (starting with the fiscal year ending August 31, 1984) the claimant shifted a significant portion of his salary to his wife. This shift has intensified as he showed less for himself and more for is [sic] wife in the tax period ending August 31, 1985.
> There is no indication that the duties and responsibilities of the claimant's wife have increased and are commensurate with her additional computation [sic].
> In this situation, there is a closed family corporation which will continue to operate as it has in the past.
> There is no question that the claimant is still in a position of control of the corporation and can more or less regulate the reporting of his earnings in such a fashion that is advantageous to him, while at the same time there would really be no significant decrease in the total income from this business. It is inconceivable to find that the claimant will not do everything required of him in the furtherance of this business.
> Based on the information in file, it is determined that the claimant's duties and responsibilities have remained the same. The value of his services is worth much more than his payment. He is still an officer of his corporation and in a position of control. Moreover, he is in a position where he can control the amount of his earnings.
> Accordingly, the initial determination, that he has not retired according to aforementioned provisions of the Social Security Act and Regulations, is correct.
> The initial determination that Theodore Martin is not entitled to receive monthly Social Security benefits, based upon his work and earnings, is affirmed upon reconsideration.
> Reconsideration Determination at 5–6. R1–5–84–85.

indeed the obligation, to examine closely any arrangements which may have been fabricated for the purpose of qualifying for benefits or avoiding benefit deductions under the retirement test. In this regard, it is incumbent to review tax reporting strategies and bookkeeping intricacies to ascertain the actual facts bearing upon the issue at bar. ... In this case, it strongly appears that the claimant has been less than candid and the rearrangements of corporate wages are suspect. The credible evidence suggests that the claimant has retained the guidance, management and active control of the business operation. He admitted at the hearing that he continued to oversee the business status, as he had prior to the alleged "retirement".

... Notwithstanding the claimant's contentions it clearly appears that Mrs. Martin's duties constituted minimal clerical chores, the nature of which were virtually unchanged after January 1, 1985, the date on which the claimant alleged having retired. It is an inescapable conclusion that the value of the claimant's services to the corporation has been, and continues to be, worth far more than has been reported. Conversely, the unchanged duties and responsibilities of the claimant's wife are certainly not commensurate with her adjusted remuneration.

... The Social Security Act does not recognize the arbitrary rearrangement of or operation of a business between family members for the express purpose of circumventing the retirement test or of shifting Social Security coverage. To permit this type of action would contribute to a deficit in the Social Security Trust Fund, and would surely tend to defeat the related purpose of Title II of the Social Security Act.

The undersigned is aware that it is not improper for an individual to arrange his business affairs with intent to establish qualification for Social Security benefits. However, there is a duty to examine the resulting situation to determine if the source of income is a change of form rather than substance. In this case, the claimant's allegation of retirement and subsequent alleged assumption of his previous duties by his spouse is not realistic upon review of inconsistent written statements and testimony. The surrounding factual circumstances, in light of not totally credible testimony, support a conclusion that the situation is manipulated and contrived.

The evidence of record has shown that the various arrangements, with respect to arbitrary setting of salaries, the shifting of corporate office, the amount of time spent in business affairs and the continuing control of such affairs amount to no more than a device whereby the claimant has sought to divert his earning, for Social Security purposes to his wife though he maintained controls of the business (and income) and continued to perform essentially the same substantial services as he had prior to his alleged retirement.... By his testimony and other evidence, it is undisputed that the claimant has always been the dominant force behind the business entity and has continued to be. Despite the corporate arrangement, the preponderant evidence indicates that the claimant's wife is a nominal officer at most, and she has remained a subordinate employee of the corporation. It is the claimant who has been, and has remained in position to alter the payment of corporate salaries and to control, by his design, the profitability of the business venture. Further doubt is cast on the claimant's allegations of retirement upon review of the claimant's recent corporate and Federal income tax returns, which show the earnings of Mrs. Martin suddenly increasing over the past three years with a proportionately corresponding decrease in the earnings of the claimant. The valid nature of these entries is in question when one considers, as the claimant emphatically testified, that there had been declining business receipts during the same period.

In view of the foregoing, it has been concluded that the claimant was not "retired", within the meaning of the Social

Security Act, throughout calender [sic] years 1984, 1985 and thus far in 1986. Considering the claimant's testimony as to the current number of hours spent playing with the band, his rate of pay, the current average number of playing engagements per month, and his pattern of earnings as evidenced by his Social Security earnings record, it has been concluded that, for Social Security retirement test purposes, the claimant's total yearly earnings for taxable years 1984 and 1985 has been annually $20,000 with a similar amount expected for the taxable year 1986.

Office of Hearings and Appeals Decision at 3–5 (Nov. 25, 1986). R1–5–13–15. Therefore, the administrative law judge determined that Martin had failed to establish that he was retired and entitled to Social Security benefits. Accompanying the decision was a notification informing Martin that he could request review of the decision by the SSA Appeals Council within sixty days. R1–5–10.

On December 1, 1986, Martin's counsel requested review of the administrative law judge's decision by the Appeals Council because Martin claimed that he had "been 'retired' since January 1, 1985." R1–5–5. Finding no basis under SSA regulations for granting a review of the hearing decision, the Appeals Council on February 2, 1987, denied Martin's request for review and informed him that the hearing decision was the final decision in his case by the Secretary.[6] R1–5–3–4. Martin further was advised that he had sixty days from receipt of the denial of review of the Appeals Council to file a complaint in district court.

### F. The Score of Martin's Music in the District Court

Having exhausted his administrative remedies, Martin filed a complaint in the United States District Court for the Southern District of Florida on March 12, 1987, pursuant to section 205(g) of the Social Security Act (the Act), codified as amended at 42 U.S.C. § 401(g). (1982).[7] R1–1. Plaintiff Martin moved for summary judgment alleging that he had proved that he was retired within the meaning of the Act, that he was entitled to perform significant services on a limited basis as an employee of the corporation, that his salary represented a valid corporate decision as to the value of his reduced services, that there was no evidence that wages were shifted, and that plaintiff's actual compensation was less than the amount which would necessitate a deduction. The Secretary moved for judgment on the pleadings, contending that the evidence showed that, after formation of the corporation, plaintiff and his wife shifted salaries in a manner which was not commensurate with the value of their services. Accordingly, defendant argued that Martin's services in 1985 were in excess of the exempt amount for retirement and that plaintiff failed to establish his retirement, effective January 1, 1985, for Social Security purposes.

After reviewing the entire record, the district court on June 10, 1988, issued its

---

6. The following standards govern review of an administrative law judge's decision by the Appeals Council:

(a) The Appeals Council will review a case if—

(1) There appears to be an abuse of discretion by the administrative law judge;

(2) There is an error of law;

(3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or

(4) There is a broad policy or procedural issue that may affect the general public interest.

(b) If new and material evidence is submitted with the request for review, the Appeals Council shall evaluate the entire record. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently in the record.

20 C.F.R. § 416.1470 (1985).

7. In pertinent part, § 405(g) provides:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . . .

42 U.S.C. § 405(g) (1982).

opinion affirming the Secretary's final decision, denying plaintiff's motion for summary judgment, and granting defendant's motion for judgment on the pleadings. R1–14. The district court concluded that Martin had failed to meet his burden of proving that he had not earned wages in excess of the maximum amount provided by law. R1–14–11. Specifically, the district court found that the Secretary's decision was correct because Martin and his wife shifted incomes without substantial changes in their corporate services, and because the Martins' 1985 personal income tax return shows an unexplained dividend payment of $32,599.00. R1–14–10–11.

Plaintiff timely moved to alter or amend judgment under Federal Rule of Civil Procedure 59(e). R1–15. With respect to the dividend payment appearing on the Martins' 1985 personal income tax return, plaintiff argued that he had not been questioned by the SSA regarding this amount and that the dividends were first mentioned by the Secretary in the memorandum in support of his motion for judgment on the pleadings. Martin contended that he should not be denied Social Security benefits based on a factual issue first raised on judicial review and that the administrative record ordinarily could not be supplemented at the appellate level. Nevertheless, he added to the record a copy of the Martins' entire 1985 personal tax return in order to show that the subject dividends were from investments independent of Ted Martin Enterprises, Inc., as well as the Martins' 1986

individual tax return and the 1984 and 1985 corporate tax returns in order to show that the corporation was not paying him dividends in lieu of salary. Pending the district court's decision regarding altering or amending judgment, plaintiff appealed the district court's judgment to this court to preserve his appellate right in the event that the pending motion did not toll the appeal time under Rule 4 of the Federal Rules of Appellate Procedure.[8]

The district court's December 12, 1988 order concerning plaintiff's Rule 59(e) motion reaffirms as reasonable the administrative law judge's conclusion that Martin was not retired within the meaning of the Act as well as its consideration of the subject dividends. R2–22. Regarding the dividends, the district court found that the tax information was part of the record reviewed by the administrative law judge and that plaintiff could have supplemented the record at the administrative hearing or before entry of the district court's judgment. Therefore, the district court rejected plaintiff's submission of new evidence at the judicial level when the proper forum was the administrative level and denied plaintiff's motion to alter or amend the judgment. Consequently, the district court concluded that all parties had the opportunity to present their positions and that the dividend issue was properly considered.[9] Because the district court's ruling on plaintiff's Rule 59(e) motion nullified Martin's former appeal to this court pursuant to Rule 4(a)(4)[10], plaintiff Martin filed a sec-

**8.** In opposition to plaintiff's motion to alter or amend the judgment, the defendant Secretary contended that plaintiff's raising arguments which could have been made before judgment was entered and offering evidence which did not constitute newly discovered evidence was an impermissible use of Rule 59(e). R2–19–4. Concern that the district court might be persuaded by this argument was the basis for plaintiff's filing his notice of appeal while the district court's ruling on his Rule 59(e) motion was pending.

**9.** Appellant's reply brief states that the subject dividends were unexplained on the Martins' federal income tax return because they derived from investments unrelated to Ted Martin Enterprises, Inc. and, therefore, were presumptively excluded as excess wages pursuant to

42 U.S.C.A. § 411(a)(2). Appellant's Reply Brief at 18. Since we have found that the dividend payment on the Martins' 1985 personal income tax return is not determinative to our holding herein and that the shifting of corporate incomes without commensurate changes in corporate services is sufficient evidence for our decision, we will not address the divident payment shown on the Martins' 1985 tax return.

**10.** In pertinent part, Rule 4(a)(4) provides:

If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: ... (iii) under Rule 59 to alter or amend the judgment ..., the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion. A notice of

ond notice of appeal on December 14, 1988, from the June 10, 1988 final judgment of the district court to this court.

## II. THE LEGAL ORCHESTRATION

### A. The Critical Review of Martin's Music

■ Our review of the Secretary's decision, as that of the district court, is demarcated by a deferential reconsideration of the findings of fact and an exacting examination of the conclusions of law. *See Graham v. Bowen,* 790 F.2d 1572, 1574–75 (11th Cir.1986). The Act dictates that the Secretary's factual findings are conclusive if supported by "substantial evidence." [11] 42 U.S.C. § 405(g) (1982). Therefore, "[w]e may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Secretary;" rather "[w]e must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983) (citations omitted); *see Powell ex rel. Powell v. Heckler,* 773 F.2d 1572, 1575 (11th Cir.1985) (per curiam). Substantial evidence as to the Secretary's factual findings is more than a scintilla, but less than a preponderance: "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." [12] *Bloodsworth,* 703 F.2d at 1239 (citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *see McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir.1988); *Hillsman v. Bowen,* 804 F.2d 1179, 1180–81 (11th Cir.1986) (per curiam); *Walden v. Schweiker,* 672 F.2d 835, 838–39 (11th Cir.1982).

Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence. *Sewell v. Bowen,* 792 F.2d 1065, 1067 (11th Cir.1986); *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir.1986); *Bloodsworth,* 703 F.2d at 1239.

■ In contrast to the deferential review accorded to the Secretary's findings of fact, the Secretary's conclusions of law, including applicable review standards, are not presumed valid. *MacGregor,* 786 F.2d at 1053; *Smith v. Heckler,* 707 F.2d 1284, 1285 (11th Cir.1983); *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir.1982); *Smith v. Schweiker,* 646 F.2d 1075, 1076 (5th Cir.Unit A June 1981). The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal. *Gibson v. Heckler,* 779 F.2d 619, 622 (11th Cir.1986); *Bowen v. Heckler,* 748 F.2d 629, 635–36 (11th Cir.1984); *Smith,* 707 F.2d at 1285; *Wiggins,* 679 F.2d at 1389; *see Ambers v. Heckler,* 736 F.2d 1467, 1470 (11th Cir. 1984). Under the differing review standards for findings of fact and conclusions of law, we analyze the Secretary's decision in this case.

### B. The Composition of the Law: Creating Cadence from Martin's Cacophony

■ The administrative law judge based his factual findings not only upon the hearing before him, but also upon Martin's en-

---

appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above.
Fed.R.App.P. 4(a)(4).

11. The Secretary's factual findings are reviewed by the following standard:
The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary, or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Secretary, be-

cause of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations.
42 U.S.C. § 405(g) (1982).

12. The Eleventh Circuit alternatively has held that " '[t]he "substantial evidence" test is met if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion.' " *Holladay v. Bowen,* 848 F.2d 1206, 1208 (11th Cir.1988) (quoting *Boyd v. Heckler,* 704 F.2d 1207, 1209 (11th Cir.1983)).

tire SSA record, including his September 23, 1983 and January 5, 1984 applications for Social Security benefits, and his request for reconsideration of the SSA decision finding that he was not retired. The administrative law judge reviewed the responsibilities of Martin and his wife before and after the incorporation of their business in 1982. He found that Mrs. Martin's clerical duties remained the same.

The administrative law judge carefully examined the participation of Martin and his wife in the corporation as of January 1, 1985, the alleged date of Martin's retirement. He found the shifting of corporate offices, the arbitrary setting of salaries, the amount of time respectively spent by Martin and his wife on business matters, and the continuing control of the corporate business by Martin to be significant. The administrative law judge was influenced by Mrs. Martin's lack of knowledge of the current fiscal year at the hearing despite the fact that she was president of the corporation. He found that she was a nominal officer and that she remained a subordinate employee of the corporation. In contrast, Martin retained management and active control of the corporation after his alleged retirement.

The administrative law judge's review of the Martin's corporate and personal tax returns revealed that Martin's salary decreased proportionately with his wife's increase in salary over the period 1982 to 1985. He found that Martin's value to the corporation was worth more than had been reported and that the unchanged duties of his wife were not commensurate with her adjusted remuneration. Any decrease in business or income was attributed to the diminished market for Martin's music rather than to his retirement. The administrative law judge further determined that not only was Martin not retired in 1984 or 1985, but also that his annual earnings for those years were $20,000.00. Based upon his review of Martin's inconsistent written statements and testimony, the administrative law judge found that Martin's alleged retirement was unrealistic and that the various corporate arrangements were manipulated and contrived by Martin in order to divert his corporate earnings to his wife for Social Security purposes. After the Appeals Council declined review, the administrative law judge's decision became the final decision of the Secretary.

Our review of Martin's SSA record shows substantial evidence for the administrative law judge's factual findings. Because Martin maintained control of the corporation after January 1, 1985, we also find that he was not retired as of that date and that the allocation of compensation for Martin and his wife was not representative of their respective services. Even if our review of the facts were not so narrowly circumscribed, we would conclude that the factual findings of the Secretary are an accurate evaluation of the evidence.

Our review of the Secretary's legal conclusions requires a more exacting scrutiny. We must determine whether or not the Secretary correctly applied the relevant law to the facts in this case. The Act explicitly specifies the criteria for entitlement to Social Security benefits:

Every individual who—

(1) is a fully insured individual (as defined in section 414(a) of this title),

(2) has attained age 62, and

(3) has filed application for old-age insurance benefits or was entitled to disability insurance benefits for the month preceding the month in which he attained retirement age (as defined in section 416(*l*) of this title),

shall be entitled to an old-age insurance benefit for each month....

42 U.S.C. § 402(a) (Supp. II 1984). We conclude, as did the Secretary, that Martin met the ostensible requirements for Social Security benefits.

If a qualified applicant continues to receive employment income, then the Act authorizes the Secretary to impose deductions from retirement benefits in order to offset earnings in excess of statutory limits. 42 U.S.C. § 403(b) (Supp. II 1984). The Act provides that deductions, based on a qualified individual's wages or self-employment income, shall be made from any payment to which an individual is entitled until the

total of the deductions equals the individual's benefit for any month that he is charged with excess earnings.[13] Deductions are determined by applying the "annual earnings test." [14] 20 C.F.R. § 404.415 (1985). This test applies to two categories of income recipients: wage earners and self-employed individuals. In determining the entitlement of individuals in these two classifications during their initial or "grace year" of retirement, the Secretary must ascertain that the self-employed applicant does not continue to provide substantial services to his business, while the wage-earning applicant is restricted in the amount of his monthly earnings. 20 C.F.R. §§ 404.430, 404.435(c) & (d), 404.446 (1985).

As an officer of Ted Martin Enterprises, Inc., Martin is a wage-earning employee. 42 U.S.C. § 410(j)(1) (1982). Therefore, the Secretary appropriately considered the amount of Martin's monthly earnings pursuant to the statutory exempt amounts. 20 C.F.R. § 404.430. Under the Act and regulations, a beneficiary under age sixty-five in taxable year 1985 could earn $5,400.00; benefits were deductible for any month that the beneficiary earned in excess of $450.00.[15] 42 U.S.C. § 403(b) & (f) (Supp. II 1984); 49 Fed.Reg. 43,775, 43,777–78 (1984).

The Act establishes a presumption of excess earnings as follows:

For purposes of clause (E) of paragraph (1)—

. . . .

(B) *an individual will be presumed, with respect to any month, to have rendered services for wages* (determined as provided in paragraph (5) of this subsection) *of more than the applicable exempt amount* as determined under paragraph (8) *until it is shown to the satisfaction of the Secretary that such individual did not render such services in such month for more than such amount.*

42 U.S.C. § 403(f)(4)(B) (1982) (emphasis added). Wages are defined to mean all employment remuneration, irrespective of the name by which the compensation is designated or the way in which it is paid. 20 C.F.R. § 404.1041 (1985). An applicant for benefits must submit the evidence nec-

---

**13.** The provisions for benefit deductions is as follows:

> (b) Deductions on account of work
>
> (1) Deductions, in such amounts and at such time or times as the Secretary shall determine, shall be made from any payment or payments under this subchapter to which an individual is entitled, and from any payment or payments to which any other persons are entitled on the basis of such individual's wages and self-employment income, until the total of such deductions equals—
>
> (A) such individual's benefit or benefits under section 402 of this title for any month, and
>
> (B) if such individual was entitled to old-age insurance benefits under section 402(a) of this title for such month, the benefit or benefits of all other persons for such month under section 402 of this title based on such individual's wages and self-employment income,
>
> if for such month he is charged with excess earnings, under the provision of subsection (f) of this section, equal to the total of benefits referred to in clauses (A) and (B). If the excess earnings so charged are less than such total of benefits, such deductions with respect to such month shall be equal only to the amount of such excess earnings.

42 U.S.C. § 403(b)(1) (Supp. II 1984).

**14.** The annual earnings test is described as follows:

> Deductions because of excess earnings; annual earnings test.
>
> (a) *Deductions because of beneficiary's earnings.* Under the annual earnings test, deductions are made from monthly benefits ... payable to a beneficiary for each month in a taxable year (whether a calendar year or a fiscal year) beginning after December 1954 in which the beneficiary is under age 72 (age 70 after December 1982) and to which excess earnings are charged under the provisions described in § 404.434.

20 C.F.R. § 404.415(a) (1985).

**15.** We note that the Secretary used the exempt earning amounts applicable to a beneficiary aged sixty-five in 1985: $7,320.00 annually and $610.00 monthly. R1–5–12. Because Martin was not sixty-five on January 1, 1985, we have used the exempt earning amounts for a beneficiary under age sixty-five. Since the exempt earning amounts for a beneficiary aged sixty-five are greater than those for a beneficiary under sixty-five, Martin's earnings surpassed the applicable exempt amounts even more than the Secretary found. The Secretary's use of the incorrect exempt earning amounts, therefore, is inconsequential because the result remains the same.

essary to establish that all entitlement requirements are met, and failure to submit such evidence shall be the basis for the SSA to determine that the conditions for receipt of Social Security benefits have not been met. 20 C.F.R. §§ 404.701–709 (1985). The claimant, therefore, has the burden of rebutting the presumption of excess earnings under the Act.[16] 42 U.S.C. § 403(f)(4)(B). Utilizing this statutory presumption of excess earning for Martin, the Secretary properly concluded that he failed to provide an adequate rebuttal.

■■ Furthermore, in the SSA Reconsideration Determination and the final decision of the Secretary, the intent of the Act was emphasized: in order for a potential beneficiary to receive monthly cash benefits, he must be retired under the Act. Therefore, the SSA has the authority and obligation to scrutinize any tax reporting strategies which appear to be for the purpose of qualifying for benefits and avoiding benefit deductions. While incorporation in order to receive Social Security benefits is permissible under the Act, the Secretary must be assured that the alleged retirement is legitimate, actual and bona fide. In this case, the shifting of corporate offices and salaries, while corporate responsibilities remained the same, created suspicion as to the realities of the situation.

■ The Eleventh Circuit has not addressed specifically the facts presented in this case. In addition to our direction from the Act and regulations, we approve and adopt the test used by the Sixth Circuit for " 'piercing the veil' " of " 'fictitious family salary arrangements,' " where a claimant's alleged retirement and consequent shifting of salary to a family member is for the purpose of receiving Social Security benefits. *Heer v. Secretary of Health & Human Servs.*, 670 F.2d 653, 655 (6th Cir. 1982) (per curiam). In *Heer,* the claimant and his wife were the sole shareholders

and, respectively, president-secretary and vice president-treasurer of a closely held corporation. The corporation so operated for ten to twelve years, with the claimant receiving twice the salary of his wife. When the claimant's request for retirement was accepted by the Board of Directors, consisting of claimant and his wife, the wife was elected president at the claimant's former salary as president. The claimant continued to serve the corporation as secretary, but without compensation. Subsequently, the wife-president's salary was increased significantly. The facts revealed that, after the claimant's alleged retirement, his responsibilities changed very little, and that the duties of his wife did not alter appreciably.

In reviewing these facts, the Secretary found that the wife-president's salary was the sole income of the claimant and his wife. Since the wife's duties were unchanged, the Secretary assigned to her the amount of her former salary before the claimant's alleged retirement as the reasonable value of her services, and the remainder of her salary to the claimant as the value of his services to the corporation. Because the claimant's salary then exceeded the exempt amount under the Act, the Secretary denied him retirement benefits.

Concluding that the Secretary has the authority to examine substance over form of business transactions and relationships under the Act, the Sixth Circuit established the following factors for analyzing and penetrating the superficialities of unrepresentative family salary arrangements:

(1) whether the claimant continues to contribute substantial and valuable services to the corporation;

(2) whether the family member receiving the income increases his or her duties commensurate with the increase in salary; and

(3) whether the family member's income is used to support the claimant.

**16.** *See also Carlson v. Richardson,* 331 F.Supp. 1000, 1002 (D.Conn.1971) ("To defeat his claim, the hearing examiner was not required to find affirmatively that Carlson did in fact receive earnings of such a character and amount, but only that Carlson had failed to sustain his burden of proving that he had not. The inquiry here is whether there is substantial evidence on the record to support the hearing examiner's finding that Carlson's proof of his own eligibility was lacking.").

*Id.; see also Gardner v. Hall,* 366 F.2d 132, 135 (10th Cir.1966) ("The Secretary has, without question, the authority and the duty to pierce any fictitious arrangements among family members, and others, to shift salary payments from one to the other when the arrangement is not in accord with reality."); *Dondero v. Celebrezze,* 312 F.2d 677, 678 (2d Cir.1963) (per curiam) (The denial of the husband-claimant's retirement benefits was upheld upon the facts that claimant, the principal and only paid employee of a corporation that operated from his residence, placed his wife on the payroll after his alleged retirement, although her secretarial services did not change materially and the claimant "at all times remained the 'moving force.'" The Second Circuit affirmed that the record established a "'scheme of shifting wages' whereby plaintiff indirectly received 'remuneration which is, in effect, wages to him.'"); *Newman v. Celebrezze,* 310 F.2d 780, 781 (2d Cir.1962) (per curiam) ("While we recognize that plaintiff had the right to choose to retire and receive his old-age benefits irrespective of any dividend or other non-wage payments he might receive, the record supports the inference that the payments nominally made to his son constituted a mere device to mask services actually rendered and compensation received by plaintiff.").

Applying these factors to this case, we find that Martin continued to manage and control the corporation after his alleged retirement. His wife did not incur more responsibilities commensurate with her increased salary, and her knowledge of corporate business gave no indication of her actual assumption of the corporate presidency other than nominally. Pursuant to their joint tax reporting following Martin's retirement, Mrs. Martin's salary was used as family income to support Martin. This case presents a blatant example of fictitious family salary arrangements. *Cf. Taubenfeld v. Bowen,* 685 F.Supp. 237, 240 (S.D.Fla.1988) (This case was remanded to the Secretary for further proceedings because there was no finding that the wages of family members were not commensurate with their alleged increased duties and the

record did not show that the claimant was supported by these family members' increased income. Furthermore, there was no basis for the Secretary's allocating undistributed corporate funds to the claimant.).

Under the Act, the applicable regulations, and the test adopted herein, we conclude that the Secretary was correct in the legal determination that Martin was not retired on January 1, 1985, and that he was ineligible for Social Security benefits because his corporate earnings were in excess of the allowable statutory exempt amount. Under the Act, the district court had "power to enter, upon the pleadings and transcript of the record, a judgment affirming ... the decision of the Secretary, with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). Since we agree with the district court's determination that substantial evidence supports the Secretary's factual findings and that the legal conclusions are accurate, we AFFIRM the judgment of the district court.