[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 12, 2007
THOMAS K. KAHN
CLERK

No. 07-10590
Non-Argument Calendar
_____

D. C. Docket No. 05-00060-CV-5

JANE POWELL,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(October 12, 2007)**

Before ANDERSON, CARNES  and BARKETT, Circuit Judges.

PER CURIAM:

Jane Powell appeals the district court's order affirming the denial of her

applications for disability insurance benefits and supplemental security income under 42 U.S.C. §§ 405(g), 1381(c).

Powell applied for benefits in the spring of 2003, alleging that she became disabled on April 2, 2002 due to pain in the abdomen, arthritis, nerves, hormone problems, rectal prolapse, an ovarian cyst, and a number of other problems that are not directly relevant here. By the time she requested a hearing before an administrative law judge in January 2004, Powell narrowed her claim to focus on the effects of her "acute" bowel syndrome which she said caused her to go the bathroom "all the time" and made her "very rundown."

After Powell's March 2005 hearing, the ALJ issued his decision concluding that Powell was not entitled to the benefits she sought. In reaching that decision, the ALJ followed the "five-step sequential evaluation process" set out in 20 C.F.R. §§ 404.1520 and 416.920. In the first step, he found that Powell currently was not performing any "substantial gainful activity." In the second and third steps, the ALJ determined that only two of her various claimed impairments—adhesions from her bowel resection surgery and her internal rectum prolapse—were "severe," though they were not so severe as to "meet or medically equal" any of the impairments listed in the Social Security regulations that would have conclusively established her disability. See 20 C.F.R. Part 404, Subpart P, Appendix 1. Finally,

2

in the fourth step, the ALJ determined Powell's "residual functional capacity." In particular, he found that Powell's "medically determinable impairment[s]" would not prevent her from performing her "past relevant work" as a trampoline maker, a sewing machine operator or inspector, or a supervisor. This last finding meant that Powell "was not under a 'disability' as defined in the Social Security Act." Because of the ALJ's finding under the fourth step, he found it unnecessary to proceed to the fifth-step inquiry, which addresses a claimant's ability to perform other jobs available in the national economy.

After the appeals council within the Social Security Administration denied Powell's request for review of the ALJ's decision, she appealed to the district court. There, a magistrate judge issued a report and recommendation urging affirmance of the ALJ's decision. The district court entered an order overruling Powell's objections and adopting the magistrate judge's recommendation, and Powell timely appealed.

Our review of the district court's order is de novo, but we are mindful that the federal courts' "review of the [ALJ's] decision is limited to an inquiry into whether there is substantial evidence to support [its] findings . . . and whether the correct legal standards were applied." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam).

On appeal, Powell first contends that the ALJ erred in the second step of his analysis by not finding that her claimed mental impairments were severe. She says that it was wrong for the ALJ to discount two medical opinions supporting such a finding.

Powell received the first of these opinions in mid-December 2003 after being referred to psychologist Dr. Mark Eaton by the Social Security Administration's disability adjudication section. Dr. Eaton concluded that Powell had "generalized anxiety disorder" and "borderline intellectual functioning" that caused a variety of social deficiencies, including, as the ALJ put it:

> poor to no ability to relate to co-workers and relate predictability in social situations; no ability to deal with the public, deal with work stresses; and poor ability to interact with supervisors, function independently, maintain attention/concentration, understand, remember, and carry out complex job instructions; behave in an emotionally stable manner; and demonstrate reliability.

However, the ALJ assigned this opinion "no evidentiary value at all" as a result of his findings that Powell "has not had an intervening head injury, stroke, or other health-related problem to cause any change in her ability to deal with usual work stresses, other people, or changes in the work environment" and that "nothing has changed to [validate] Dr. Eaton's opinion that [Powell] is unable to perform these activities as she did in the past." With Dr. Eaton's opinion out of the way, the ALJ

4

deemed Powell's mental impairments to be "non-severe" and moved on to other issues.

The thrust of Powell's argument here is that in fact she did suffer some "intervening . . . health-related problem" that worked a "change in her ability" to navigate the everyday stresses of a work environment. That intervening problem was her September 2003 bowel resection surgery which involved the removal of approximately three feet of her intestines and which resulted in her frequent incontinence. It was error to disregard this intervening event, Powell argues. Only after the surgery did she begin experiencing the severe mental impairments, and pre-surgery evidence suggesting that she has no mental impairments does not amount to substantial evidence undermining Dr. Eaton's post-surgery conclusion to the contrary.

We disagree. Without some indication that the mental impairments identified by Dr. Eaton arose as a result of Powell's bowel surgery, there is nothing to set Dr. Eaton's assessment apart from the other evidence in the record suggesting that Powell has no mental impairments. In other words, considering the record as a whole, Dr. Eaton's evaluation of Powell stands as just one piece of evidence among many. For example, the ALJ cited: (1) Powell's statements in October 2002 that she was able to perform her normal daily functions and that she

5

attributed no functional limitations to her mental state; (2) Powell's statements to

Dr. Eaton that she had never needed treatment for psychological issues; and (3)

Powell's failure in an October 2003 (post-surgery) daily living questionnaire to

relate any of her functional limitations to a mental impairment. Moreover, in his

brief the Commissioner pointed to additional evidence supporting the ALJ's

finding, such as: (1) Dr. Khalid Maqsood's February 2002 finding that Powell had

a normal mental status; (2) Dr. Stanley Wallace's August 2002 assessment that

Powell "relates well"; and (3) a June 2004 (post-surgery) report from the Satilla

Mental Health Center indicating that Powell's psychiatric condition was "normal."

Any one of these items constitutes evidence contradicting Dr. Eaton's assessment.

Together, they amount to substantial evidence supporting the ALJ's finding.

The other medical opinion at issue is the one from the Satilla Mental Health

Center in December 2004 diagnosing Powell with depression, poor memory, and

antisocial behavior. We agree with Powell that the ALJ should not have discarded

this opinion solely because she went to the mental health center "at her counsel's

request." See generally 20 C.F.R. § 404.1527(d) (explaining the relative weight an

ALJ must accord medical opinions). But it is apparent from the evidence we have

just recounted that this error in the ALJ's reasoning is of no consequence. At the

end of the day, the ALJ's finding that Powell suffers from no severe mental

6

impairments rests squarely on evidence a "reasonable person would accept as adequate to support [his] conclusion." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (explaining the "substantial evidence" standard). Under our highly deferential standard of review, then, we must affirm the ALJ's finding that Powell suffered from no severe mental impairments. See id.

## II.

Next, Powell contends that the ALJ erred when he found certain aspects of her testimony at the hearing to be "not fully credible."

The ALJ made this finding while conducting his assessment of Powell's residual functional capacity. To do this, the ALJ began by recounting the definition of that term, the types of evidence he must consider, and Powell's testimony bearing on the subject. Powell's testimony included the facts that: (1) her incontinence required her to go to the bathroom three to four times per hour on good days and five to seven times per hour on bad days; and (2) that she suffered from swelling and pain in her left ankle.

Before setting out his finding of Powell's residual functional capacity, the ALJ explained the weight he would give Powell's testimony. He wrote, in relevant part:

> The undersigned has considered the claimant's own subjective allegations and has found them not fully credible, because there is a

7

lack of objective evidence to support her alleged symptoms/complaints. The claimant testified that her bowel incontinence precludes her from walking, standing, or doing any physical activities and she reports that her left ankle swells and it hurts to put it on the floor; however, she reports that she walks on the treadmill daily [citation omitted]. Also in February 2004, the claimant denied having any right lower quadrant pain and Dr. Bates noted she appeared to be progressing satisfactorily.

As one would expect, the ensuing statement of Powell's residual functional capacity reflected this view of Powell's testimony. It found that "the claimant's pace might be disrupted once or twice a day," but did not specifically mention Powell's ankle pain or persistent incontinence.

On appeal, Powell does not challenge the ALJ's finding with respect to her claimed ankle pain. Instead, she argues only that the ALJ erred when he rejected her claims of bowel incontinence. We agree.

To begin, we must note that the ALJ mischaracterized Powell's testimony when he wrote that "[t]he claimant testified that her bowel incontinence precludes her from walking, standing, or doing any physical activities." If that was the substance of Powell's testimony, we would agree with the ALJ that "there is a lack of objective evidence to support" that claim. However, we have closely examined the transcript of Powell's hearing, and have found no sweeping claims of this sort. Powell provided a more nuanced account of the limitations, noting, for example, that she could drive but only did so to visit her doctor or her lawyer.

8

Armed with a more accurate understanding of Powell's testimony about her bowel problems, we conclude that neither of the ALJ's two reasons for discrediting that testimony amounts to substantial evidence in support of his adverse credibility finding. The fact that Powell walks on the treadmill each day may explain why the ALJ rejected Powell's claim of ankle pain, but it does not support the decision to discredit Powell's claim of frequent incontinence. It is entirely possible to go to the bathroom with the frequency Powell claims she must go and still do the treadmill exercise to the extent she claims to do it. Powell testified that she walks on the treadmill for only about fifteen minutes daily. So even on a "bad" day, when Powell must go to the bathroom five to seven times in one hour (and thus never has an uninterrupted fifteen-minute window of time), it is possible that she splits up her exercise into several-minute increments and performs her exercise in between bathroom breaks.

Moreover, Dr. Bates' February 2004 report entry—the only other evidence the ALJ cited for discrediting Powell's testimony—consists of only two sentences. In their entirety, they read: "[Powell] is presently without pain in terms of her right lower quadrant. She appears to be progressing satisfactorily." That is all. We do not see how those two sentences support the ALJ's decision to reject Powell's testimony about her incontinence.

9

Powell presented at least two doctors' reports associating her incontinence with the severe physical impairments the ALJ found her to have. So if anything, the medical evidence in the record provides an independent basis for accepting Powell's claims about her incontinence. At any rate, because neither of the ALJ's reasons for discrediting Powell's incontinence testimony amounts to substantial evidence supporting his decision to reject that testimony, we must remand this case so that the ALJ can re-assess the effect of Powell's claimed incontinence after either accepting her testimony or by articulating an adequate reason to reject it.

**III.**

Powell's final contention is that the ALJ erred by "not even discuss[ing], review[ing], credit[ing], or discredit[ing]" the statements of her sisters confirming Powell's accounts of her constant diarrhea. Not mentioning the sisters' statements, Powell says, violated the ALJ's duty to "state specifically the weight accorded to each item of evidence." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).

Because the sisters' statements basically duplicate Powell's own testimony, it makes sense that the ALJ would treat the two sets of evidence in the same manner. See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . [enables us] to conclude

10

that [the ALJ] considered her medical condition as a whole.")  And since

our disposition of this case requires reconsideration of Powell's claims of frequent

incontinence, we will leave consideration of the sisters' statements, along with the

other evidence in the record, to the ALJ.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**