[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 20, 2011
JOHN LEY
CLERK

No. 10-14957
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cv-01518-WCO

H. KEITH ALEXANDER,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 20, 2011)

Before BARKETT, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

H. Keith Alexander appeals the district court's order affirming the Social

Security Commissioner's (Commissioner's) denial of disability insurance benefits,

42 U.S.C. § 405(g). The Commissioner determined that Alexander was not eligible for disability benefits because he failed to demonstrate his insured status at the time he became disabled. To show that he met the insured status, Alexander must have had sufficient quarters of coverage, in this case 20 quarters during the 40-quarter period ending with the quarter in which he became disabled (the 20/40 requirement). 20 C.F.R. § 404.130. Both the Administrative Law Judge (ALJ) and the district court agreed with the Commissioner's determination that Alexander lacked the necessary quarters of coverage. After a thorough review of the record, we affirm.

I. Background

On August 12, 2003, Alexander applied for disability benefits, alleging a disability onset date of April 30, 2003. When he filed for disability, his earnings record showed no quarters of coverage in 2001 or 2002. On the same day, Alexander and his wife Monique submitted statements claiming that they owned a business together and that the total earnings from their business for 2001 and 2002 should have been split between them. A few months later, the Commissioner notified Alexander that it credited him with $7,713 in self-employment earnings for 2001, but did not credit him with any earnings for 2002. The Commissioner then denied Alexander's application for benefits. On reconsideration in 2007, the

Commissioner informed Alexander that he did not meet the insured status required for disability benefits and that the $7,713 posted to his earnings record for 2001 was in error and would be removed and reposted to Monique's record.

At a subsequent hearing before an ALJ, Alexander's attorney indicated that Alexander wanted to amend the alleged onset date of disability to March 25, 2002, when his doctor started treating Alexander regularly for pain. The ALJ informed Alexander that there was a "technical problem" with his case because he would not qualify for benefits without quarters of coverage for 2001 and 2002.

Alexander testified that he met Monique in 1999 and began to work at her company in 2001, the year they were married. Although Alexander was never paid, he and Monique shared a joint bank account. Alexander worked between 25 and 35 hours per week doing computer-related work and bookkeeping for the business. But by the end of 2002, Alexander could no longer work due to his medical limitations.

Monique then testified that Alexander set up and maintained the computer systems, ran reports, and did the bookkeeping. His assistance depended on how his health was at the time and he stopped working entirely in early 2003. Monique never issued a W2 Form to Alexander showing employee income because she considered him a co-owner of the business. According to the record, none of the

tax forms, banking records, or state certificates of registration for the business listed Alexander as co-owner.

Alexander's earnings record reflected that he had four quarters of coverage in 1992, 1993, 1994, 1995, and 1996. He had no quarters of coverage in 1997, 1998, 1999, 2000, 2002, or 2003. In his disability report, Alexander indicated that he had stopped working on April 30, 2003. An agency worksheet indicated that without 2001 earnings, Alexander would not have insured status if his disability onset date was April 30, 2003. But with earnings in 2001, Alexander's last insured date would have been December 31, 2002.

The ALJ concluded that, based on the records and tax documents submitted, Alexander's and Monique's testimony concerning his co-ownership of the business lacked credibility. The ALJ found that, although it was reasonable to expect that Alexander helped with bookkeeping and computing activities from time to time, there was no evidence that the two owned the business together or intended to create a partnership. Accordingly, the ALJ calculated that Alexander only had 15 quarters of coverage in the 40 quarters immediately preceding the quarter of his onset of disability on April 30, 2003.[1] The ALJ stated that the

---

[1] The ALJ determined that Alexander had three quarters of coverage in 1993; four quarters in 1994; four quarters in 1995; four quarters in 1996; and no coverage from 1997 through 2002 and the first quarter of 2003.

"documentary record and testimony [did] not support the claimant's contention that work activities he performed in 2001 and 2002 resulted in covered earnings sufficient to confer additional quarters of coverage necessary to establish insured status . . . as of his alleged onset date of disability." The ALJ additionally found that Alexander last met the insured status requirement on December 31, 2001, before his alleged onset date of disability. The ALJ determined that, due to his lack of disability insured status, Alexander had not been under a disability at any time from his alleged onset date through the date of the decision. Alexander appealed and the Appeals Council denied review.

Alexander then filed a complaint in district court. The magistrate judge found that substantial evidence supported the ALJ's finding that the 2001 earnings should have been attributed to Monique rather than to Alexander. The magistrate judge also noted that the Appeals Council's failure to consider Alexander's amended onset date in 2002 was harmless error because, without the 2001 quarters of coverage, Alexander would not have been eligible for benefits based on either onset date. Adopting these findings, the district court entered judgment in favor of the Commissioner.

On appeal, Alexander first argues that he met the insured requirement before his alleged disability onset date based on his earnings from 2001.

Specifically, Alexander asserts that in 2003 the agency added four quarters of coverage to his 2001 earnings record, and that this decision was conclusive because the appeal window and time limitation for revising the Commissioner's records passed and no time-limitation exception applied. Second, Alexander argues that the ALJ misidentified his disability onset date as April 30, 2003 because Alexander had amended his onset date to March 25, 2002.

## II. Standard of Review

We review the decision of the ALJ as the Commissioner's final decision when the ALJ denies benefits and the Appeals Council denies review of the ALJ's decision. *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). "Our review in a Social Security case is the same as that of the district court." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The standard of review is "demarcated by a deferential reconsideration of the findings of fact and exacting examination of the conclusions of law." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Commissioner's factual findings are conclusive if "supported by substantial evidence," but the "[Commissioner's] conclusions of law, including applicable review standards, are not presumed valid." *Id.* (quotation omitted).

## III. The 20/40 Requirement

To qualify for disability benefits, Alexander must have 20 quarters of coverage during the 40-quarter period ending with the quarter in which he became disabled. "[I]nsured status is a basic factor in determining if [a claimant is] entitled to old-age or disability insurance benefits or to a period of disability . . . . If [a claimant is] neither fully nor currently insured, no benefits are payable based on [the claimant's] earnings." 20 C.F.R. § 404.101(a). In this case, Alexander must establish both earnings coverage from 2001 and an amended disability onset date of March 2002 to meet the 20/40 requirement.

### A. Earnings Coverage from 2001

Although the Commissioner in this case originally determined that Alexander had income from his wife's business in 2001, the Commissioner later corrected this finding and concluded that Alexander had no income in 2001. Generally, the Commissioner may correct any entry of wages or self-employment income before the expiration of the "time limitation." 42 U.S.C. § 405(c)(4). The time limitation is a period of 3 years, 3 months, and 15 days after the individual received earnings. *Id.* at § 405(c)(1)(B). "Before the time limit ends for any year, [the Commissioner] will correct the record of [an individual's] earnings for that year for any reason if satisfactory evidence shows SSA records are incorrect. [He]

7

may correct the record as the result of a request filed under § 404.820 or [he] may correct it on [his] own." 20 C.F.R. § 404.821.

After the time limit expires, the Commissioner's records generally are conclusive evidence of the individual's wages or self-employment income. 42 U.S.C. § 405(c)(4)(A). But the statute and regulations permit the Commissioner to correct an individual's earnings records after the time limit under certain circumstances. *Id.* at § 405(c)(5); 20 C.F.R. § 404.822. One of those circumstances is when "an application for monthly benefits . . . was filed within the time limitation following such year; except that no such change, deletion, or inclusion may be made pursuant to this subparagraph *after a final decision upon the application for monthly benefits*." 42 U.S.C. § 405(c)(5)(A) (emphasis added). This is known as the pending-application exception.

In this case, we conclude that the Commissioner could amend Alexander's earnings record in 2007 under the pending-application exception because Alexander had filed an application for benefits within the time limit for correcting his earnings record and there was not yet a final decision on his application. 42 U.S.C. § 405(c)(5)(A) . Nothing in the statute or regulations prohibits the agency from revisiting its earlier earnings record decision if there is a pending application. 42 U.S.C. § 405(c)(5)(A), (B); 20 C.F.R. § 404.822(c). Accordingly, the agency

8

did not err when it addressed his 2001 earnings after the time limitation expired and determined that he had no coverage that year.

### B. Alexander's Disability Onset Date

Social Security Rules define the onset date of disability as "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20. Relevant factors in determining the onset date include a claimant's allegations, work history, and medical and other evidence related to the severity of the impairment. *Id.*

Here, the ALJ did not explain which disability onset date he applied, although it appears from the opinion that he applied the April 2003 date. Nevertheless, we conclude that the ambiguity as to Alexander's disability onset date is immaterial. Even if the ALJ relied on the amended March 2002 date, Alexander would not be eligible for disability benefits without earnings coverage in 2001.

Accordingly, the Commissioner properly determined that Alexander did not qualify for benefits.

**AFFIRMED.**