[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**June 29, 2005**
**THOMAS K. KAHN**
**CLERK**

No. 04-14581
Non-Argument Calendar

_____

D.C. Docket No. 03-00089-CV-4

MARY L. JOHNSON,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Georgia

_____

**(June 29, 2005)**

Before ANDERSON, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Mary Johnson appeals the district court's affirmance of the Social Security Commissioner's ("Commissioner's") denial of benefits. For the reasons that follow, we vacate and remand.

Johnson applied for disability and supplemental security income benefits in January 2000, claiming that she had been disabled since October 27, 1999 due to a back injury. At a hearing before an Administrative Law Judge ("ALJ"), Johnson testified that the pain was a "ten" on a scale of one to ten and that it was more severe when she tried to sit or stand and, therefore, she spent about twenty-three hours a day sleeping. Johnson testified that she informed her doctors that her medications made her sleepy, but she admitted that she did not tell them she slept all day due to the pain. She stated that her roommate assisted her with bills and activities of daily living. She denied spending time watching television or reading.

In support of her disability application, Johnson reported her prior occupations as including tagger, cashier, and security guard. Johnson explained that her cashier job required standing for about four and a half hours a day, walking about one hour, sitting for about thirty minutes, and minimal lifting. Her job as a security guard required walking for five hours, sitting for one hour, standing for one hour, and minimal lifting. Johnson also indicated that she was

able to prepare some meals, visit with friends for short periods, ride in a car, do some shopping, and read. Johnson noted, however, that she needed some assistance with bathing and dressing due to pain. The Social Security representative evaluating the report met with Johnson face-to-face and noted that Johnson used a cane, had difficulty sitting, standing, and walking, and appeared uncomfortable. The vocational analysis, however, indicated that the security guard position was light exertional work,[1] which Johnson was capable of doing, and therefore, she could return to her past work despite her injury.

According to an MRI performed in November 1999, Johnson suffered from degenerative disc disease and protrusion. At that time, neurosurgeon James Lindley prescribed physical therapy and pain medication. Dr. Donald Fellner completed a medical consultative case analysis in February 2000, finding that Johnson's condition was "non-severe."

Lindley saw Johnson in May 2000, finding her in painful distress with very limited range of motion in her back and tenderness in her lumbar spine. He observed 5/5 strength, although the pain decreased Johnson's ability. Dr. Paul

---

[1] Light exertional work involves lifting up to twenty pounds, standing or walking for at least six hours, or sitting using push/pull mechanisms. 20 C.F.R. § 404-1567(b).

Lorenzen, an orthopedic surgeon, treated Johnson in July 2000, noting that she seemed very uncomfortable as a result of the disc herniation.

In August 2000, Johnson received weekly steroid injections, but did not obtain any relief from the pain. Johnson claimed she was unable to sit for long periods of time, experienced pain radiating from her back down her legs, and had limitations in flexion.

Johnson was seen in the emergency room in October 2000 complaining of back pain. The examining physician noted that her presentation was "quite dramatic," making assessment difficult, that Johnson experienced some pain with movement, and that she was able to move from one position to another and transfer from sitting to standing without difficulty, but that the discomfort was mostly anticipatory. When Lindley examined Johnson in November 2000, he noted that her back pain was not improving with medical treatment and he recommended surgery.

Consulting internist and cardiovascular specialist Dr. William Maloy evaluated Johnson's medical records in November 2000 to determine her residual functioning capacity ("RFC"), but he did not examine her. He found that she could lift twenty pounds occasionally, lift ten pounds frequently, stand or walk for six hours a day, sit for six hours a day, and had unlimited push/pull abilities.

Maloy further found that Johnson had frequent limitations in climbing, balancing, kneeling, and crawling, and occasional limits in stooping and crouching. Notably, Dr. Maloy indicated that he found Johnson's complaints to be "credible."

Johnson underwent lumbar fusion surgery in January 2001. One month after surgery, Lindley noted that Johnson no longer experienced radiating pain, but that she still had some tenderness. Two months post-surgery, Lindley found that Johnson's pain was improving, although she continued to experience some leg pain and limited range of motion in her back. When Johnson went to the emergency room complaining of back pain in April 2001, the X-ray showed no abnormalities and Johnson was given Percocet and Ibuprofin.

By May 2001, Lindley noted that Johnson continued to experience back and leg pain, although it was less intense since the surgery, and he indicated that Johnson could perform light duty but could not return to her prior occupations. Lindley also prepared an RFC evaluation in 2001, concluding that Johnson could sit for one hour at a time for a total of four hours per day, could not stand or walk for any length of time, could occasionally lift ten pounds, and could not operate foot pedals. Lindley further indicated that Johnson could not bend, squat, crawl, climb, or reach, and had restrictions in her environment. Finally, Lindley

concluded that there was an objective medical condition that could be expected to produce Johnson's subjective complaints.

The ALJ upheld the Commissioner's denial of benefits, finding that Dr. Lindley's RFC evaluation was inconsistent with his own medical notes, was overly "pessimistic" about Johnson's capabilities, and that Johnson was capable of performing light duties, as her pain had decreased post-surgery. The ALJ credited Dr. Maloy's evaluation that Johnson could do her past relevant work as a security guard, cashier, or tagger. Finally, the ALJ found that Johnson had "zero" credibility regarding her pain because there was no objective medical evidence to support her sleeping for twenty-three hours a day, and the ALJ considered as noteworthy the fact that Johnson had never told her physicians about this side effect from her medications.

After the appeals council denied review, Johnson filed her complaint in the district court. The magistrate judge recommended affirming the Commissioner's decision, and the district court adopted the recommendation over Johnson's objections. Johnson now appeals raising two issues: (1) whether the ALJ properly discredited her subjective complaints of pain, and (2) whether the ALJ properly weighed the opinions of Johnson's physicians.

We review the Commissioner's decision to determine whether it is supported by substantial evidence and whether the correct legal standards were applied. Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). This court does not reweigh evidence or substitute its judgment for that of the Commissioner, but instead reviews the entire record to determine if the decision reached is reasonable and supported by substantial evidence. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (stating that substantial evidence is "'more than a mere scintilla, but less than a preponderance'"). "If the Commissioner's decision is supported by substantial evidence [this court] must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

A.      Subjective Complaints of Pain

In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively

7

determined medical condition can reasonably be expected to give rise to the claimed pain." If the ALJ discredits subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so; the failure to do so results in the testimony being accepted as true as a matter of law. Wilson v. Barnhart, 284 F.3d at 1225 (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir.1991)).

In assessing Johnson's credibility, the Social Security Regulations require the ALJ to consider (1) Johnson's daily activities; (2) the location, duration, frequency, and intensity of the symptoms; (3) factors that aggravate symptoms; (4) the type, dosage, and side effects of any medication taken to relieve the symptoms; (5) any other treatment or measures used to relieve symptoms; and (6) any other factors. SSR 96-7p.

Here, the ALJ concluded that the medical evidence did not support Johnson's alleged severity of pain, and this decision is supported by substantial evidence. In her disability reports, Johnson indicated that she could do daily grooming with assistance, could do some cooking and shopping, could ride in the car and visit friends, watched television, and read. At the hearing, however, Johnson testified that she spent about twenty-three hours a day in bed asleep due to the pain, that she could not cook, watch television, or read, and the pain was a "ten" on a scale of one to ten. Although pain alone may support a finding of

8

disability, Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995), the medical evidence in this case did not support Johnson's subjective complaints of pain. The post-surgery notes indicated that Johnson's pain had decreased since the surgery, yet her testimony implied that she experienced greater limitations due to pain than she did when she completed her disability application. Moreover, one examining physician found Johnson to be "dramatic" in her presentation. Furthermore, if Johnson was experiencing drowsiness of the severity she alleged, it is more likely that she would have mentioned this to her treating physician. Watson v. Heckler, 738 F.2d 1169, 1173 (11th Cir. 1984). Therefore, the ALJ's determination is supported by substantial evidence.

B.      Opinions of the Treating and Consulting Physicians

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citations omitted); see also Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). The opinion of a non-examining

physician does not establish the good cause necessary to reject the opinion of a treating physician. Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988).

Here, the ALJ determined that Johnson was able to perform her past relevant work based on Maloy's RFC evaluation. In rejecting Lindley's assessment, the ALJ explained that he found Lindley's RFC findings inconsistent with the medical record, as expressed by Lorenzen, and Lindley's own notes. Although the ALJ may have properly rejected Lindley's RFC evaluation for good cause, as it was inconsistent with his own progress notes, the ALJ nevertheless, erred in giving greater weight to the opinion of Maloy, a non-examining physician.

The records reflect that, following surgery, Johnson was doing well, had less severe pain, and was improving. Lindley noted that Johnson could perform "light duty," although he did not explain this term. Fellner found Johnson's pre-surgery condition "non-severe." Additionally, on one trip to the emergency room, the examining physician noted that Johnson was "quite dramatic" and that her reaction to discomfort and pain was mostly anticipatory.

In making disability determinations, the Commissioner considers whether the evidence is consistent and sufficient to make a determination. If it is not consistent, the Commissioner weighs the evidence to reach her decision. If, after weighing the evidence, the Commissioner cannot reach a determination, then she

10

will seek additional information or recontact the physicians.  20 C.F.R.

§ 404.1527(c).  In addition, under the Social Security Regulations,

> [w]hen the evidence . . .  from your treating physician . . . or other
> medical source is inadequate for us to determine whether you are
> disabled, we . . . will first recontact your treating physician . . . or
> other medical source to determine whether the additional
> information . . . is readily available. We will seek additional evidence
> or clarification from your medical source when the report from your
> medical source contains a conflict or ambiguity that must be resolved,
> the report does not contain all the necessary information, or does not
> appear to be based on medically acceptable clinical and laboratory
> diagnostic techniques.

20 C.F.R. § 404-1512(e).

Given the record before us, we find that the Commissioner was not able to make a disability determination based on the evidence presented, and, therefore, additional evidence was necessary.  Because the evidence established, and Johnson does not contest, that she did not have an impairment that met or exceeded a Listing, Johnson was required to show that she is unable to perform her past relevant work to establish her disability.  See 20 C.F.R. § 404.1520.  The RFC is an assessment of the claimant's ability to do work despite her impairments. 20 C.F.R. § 404-1545(a); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull, among other tasks.  20 C.F.R. § 404-1545(b).

Considering the medical records as a whole, it is not clear what level of work, if any, Johnson would be able to perform. Maloy's RFC evaluation is not dispositive, as its conclusions are from a non-treating, non-examining physician, and the other medical records express no indication of Johnson's ability to perform her past work. See Sharfaz v. Bowen, 825 F.2d 278, 279-81 (11th Cir. 1987) (holding that non-treating physician's opinions are entitled to little weight when contradictory to treating physician's opinions, and will not constitute substantial evidence standing alone); Spencer on behalf of Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985) (finding that opinion of non-examining physician, taken alone, could not constitute substantial evidence). Johnson's past work as a cashier required standing for about four and a half hours a day, walking about one hour, siting for about thirty minutes, and minimal lifting. Her job as a security guard required walking for five hours, sitting for one hour, standing for one hour, and minimal lifting. Although the vocational analysis indicated that the security guard position was light exertional work, which Johnson was capable of doing, the medical records are inconsistent with this analysis, as the records show that she continued to experience pain in her back and legs and she walked with a cane. Even if her level of pain was not credible, as discussed above, the medical records do not support a finding that she was able to return to her past work.

12

Because the Commissioner was not able to determine disability based upon the record before her, the Commissioner or the ALJ should have attempted to resolve the inconsistencies to determine whether Johnson was disabled. When the records are inconclusive on whether the claimant can return to her past relevant work, the record must be developed further through vocational expert testimony. Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988). As the ALJ did not elicit any testimony from a vocational expert in this case, we VACATE and REMAND for further proceedings.