**Jessie L. WATSON, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 83–7391
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Aug. 9, 1984.

---

Thomas G. Keith, Jerrilee P. Sutherlin, Legal Services of North-Central Alabama, Huntsville, Ala., for plaintiff-appellant.

Mary P. Thornton, Asst. U.S. Atty., Birmingham, Ala., for defendant-appellee.

Before GODBOLD, Chief Judge, RONEY and TJOFLAT, Circuit Judges.

PER CURIAM:

On appeal from the district court's affirmance of a denial of disability benefits, Jessie L. Watson argues the determination that she could return to her past work as a collator is not supported by substantial evidence and that Watson's pain was not properly considered. We affirm.

Watson, 53 years old at the time of the decision, has a third grade education and is unable to read well. Her past work experience has been collator in a printing company and packager and assembler of automotive and missile parts.

Watson filed an application for disability benefits because of impairments resulting from arthritis and hip infection. She had been treated by Dr. Louis Horn, an ortho-

pedist, from December 1979 through June 1981. In 1979, Dr. Horn diagnosed synovitis of the elbows, right wrist and ulnar fingers bilaterally. X-rays of her hands revealed bony erosions and a rheumatoid nodule on the right elbow. In January and February 1980 she reported improvements following an injection in the wrist. In December 1980 she was treated for right hip pain. Examination revealed loss of hip rotation. She was hospitalized and underwent surgical procedure for open drainage of the right hip. She also had rheumatoid nodules from the right little finger and the right elbow removed. While in the hospital, examination revealed swelling of the metacarpal phalangeal joints and possible decrease in grip strength due to joint pain.

A consultative examination of March 1981 revealed decreased wrist motion, slight synovitis of the dorsal wrist, and ulnar deviation of the metacarpal phalangeal joints with swelling. There was slight subluxation of the thumb, but the fingers retained a full range of motion. The physician felt Watson had a positive Phalen's test which was consistent with bilateral carpal tunnel syndrome. Although she had a full range of knee motion, movement of the knees caused mild popping and grating, indicating some degenerative or arthritic problem in the intrapatellar region. There was slight swelling of the feet. There was five degrees of fixed flexion of the right hip with further flexion to approximately 95 to 100 degrees. X-rays of the hips failed to show gross abnormalities, but her hands showed cystic changes of the proximal phalanax and metacarpal areas consistent with rheumatoid arthritis. Dr. Horn's post-operative care notes in March 1981 described her as doing well, and in June 1981 pretty well. Dr. Horn submitted a physical capacity evaluation in September 1981. He indicated that she could not continue heavy work, but that she could engage in sedentary work with restrictions against climbing, pushing and pulling movements, gross manipulations, bending and reaching.

Dr. Fambrough, an orthopedist, examined Watson in March 1981 at the request of the Social Security Administration. Despite her complaints of pain, he found her not to be in severe pain. He noted some pain in her wrists. Dr. Fambrough diagnosed Watson as having fairly severe rheumatoid arthritis.

Dr. Yelton did not examine Watson but reviewed her record for the Social Security Administration. He completed a residual functional capacity evaluation concluding that Watson could lift and/or carry 20 pounds occasionally to ten pounds frequently. He also stated that she could stand, walk, and sit for at least six hours out of an eight-hour workday. He further noted that Watson could only occasionally perform pushing and pulling movements (arm and/or leg controls) and gross manipulation. Dr. Yelton made no diagnosis.

Watson went to a rheumatologist, Dr. Gray, in December 1981 and in January 1982. While no report of Dr. Gray's is in the record, he answered a residual functional capacity evaluation stating that Watson could not sit for more than two hours in an eight-hour workday and that she could not stand or walk at all during such a period. He also found that she could never lift or carry even five pounds. Dr. Gray further noted that Watson could not use her hands for simple grasping, pushing and pulling of arm controls, or fine manipulations. He also determined that she could not bend or reach at all. Dr. Gray diagnosed rheumatoid arthritis.

The administrative law judge concluded that Watson's arthritic condition would not preclude her from engaging in at least light work activity with restrictions against performing pushing and pulling movements and gross manipulation. He found the evidence failed to show that Watson's arthritic impairment would preclude her from engaging in a wide range of light-work activity on a sustained basis. The administrative law judge added that Watson could not return to her former work as a packager and assembler, but that she could return to her former occupation as a collator that

requires a light level of exertion and does not involve the above restrictions.

Pursuant to 20 C.F.R. § 404.1567(b) the regulations define light work as

lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Residual functional capacity evaluations are conflicting as to Watson's ability to do light work. Dr. Horn found Watson could lift or carry ten pounds occasionally to less frequently. He noted that she could stand and walk less than six hours of an eight-hour workday but could sit and work for at least a six-hour day. She had moderate restrictions on pushing and pulling and gross manipulation and limited restrictions in bending and/or stooping movements and reaching. These findings are partially supported by Dr. Yelton's residual functional capacity evaluation. Although Dr. Gray made a contrary residual functional capacity evaluation it was the responsibility of the administrative law judge to resolve the conflict.

Resolving that conflict, the administrative law judge determined that Watson could engage in light work with restrictions on pushing, pulling and gross manipulation. He found she could engage in a wide range of light work. Although she could not return to her former work as a packager and assembler, she could return to her former work as a collator.

In a restricted ability case, the question is always: how much restriction? On con-

flicting evidence, the administrative law judge found the amount of restriction did not preclude plaintiff's return to her former work as a collator. Light work requires lifting ten pounds frequently and some pushing and pulling when sitting or a good deal of standing or walking without pushing and pulling requirements. There is substantial evidence to support the administrative law judge's determination that Watson could return to her former work as a collator.

■ The administrative law judge determines the disabling nature of pain. *Gaultney v. Weinberger,* 505 F.2d 943, 945–46 (5th Cir.1974). This Court will uphold the determination if substantial evidence supports it. *Fortenberry v. Harris,* 612 F.2d 947, 950 (5th Cir.1980). When making a determination of the disabling nature of pain, an administrative law judge must recognize that pain alone can be disabling, even if there is no objective medical evidence to support the claimant's testimony on pain. *See Gaultney,* 505 F.2d at 945.

■ Some of the administrative law judge's language suggests he might have required objective medical evidence to support Watson's testimony about the constant pain.

This evaluation of disability has included consideration of the claimant's allegations of pain as pain can be an important factor in causing functional loss and can alone be disabling in particular situations. However, it is well known that pain is a subjective symptom and not easily measurable. Thus, the allegation of a severe impairment should be supported and should usually be demonstrable by medically acceptable clinical and laboratory diagnostic techniques and allegations of pain should be weighed with the overall record which includes clinical data, testimony, demeanor at the hearing, frequency of treatment, response to treatment, use of medications, daily activities, motivations, credibility and residual functional capacity. The objective medical findings as previously cited herein would not be commensurate with a

total inability to perform all levels of work activity but rather only heavier levels of exertion. (footnote omitted)

Review of the entire opinion indicates, however, the administrative law judge considered not only the objective medical findings but also Watson's use of pain-killers, her failure to seek treatment after June 1981 (until after the denial of benefits by the administrative law judge), her daily activities as testified to at the hearing, her statements that conflicted with those of her family, and her demeanor at the hearing. We conclude that the administrative law judge did not improperly require objective medical findings to support Watson's testimony about her pain.

AFFIRMED.

GODBOLD, Chief Judge, dissenting:

I would reverse and remand to the Secretary.

In my view, the administrative law judge's finding that Watson could return to work as a collator is not supported by substantial evidence. In their Residual Functional Capacity (RFC) questionnaires, Drs. Horn, Yelton, and Gray all noted restrictions on pushing and pulling movements; Dr. Horn and Dr. Yelton found restrictions on gross manipulation and Dr. Gray on fine manipulations. Furthermore, the administrative law judge himself found restrictions against "performing pushing and pulling movements and gross manipulation."[1] Such restrictions are inconsistent with a finding that Watson could return to work as a collator. Watson described her job as:

We laid papers around a table, a table like this, and you know, like you would lay number 2 sheet down, 2, 3, 4, you know, until you got on up maybe to a hundred; and you walked around the table and you picked it up, you know, like

this (indicating) ... one on top of the other, and you stapled those into books, made books.[2]

The Department of Labor describes the position of collator similarly. *See* Department of Labor, *Dictionary of Occupational Titles* § 977.687–010 (4th ed. 1977). Because all three RFCs in the record, as well as the administrative law judge's own finding of restrictions, indicate that Watson could not return to her past work as a collator,[3] the administrative law judge's contrary conclusion is not supported by substantial evidence and should be reversed.

could arguably support a finding that Watson had no restrictions, the administrative law judge's contrary finding indicates that he did not rely on Dr. Fambrough's comment when he concluded Watson could return to her work as a collator.

---

1. Record on Appeal Vol. 2 at 24–25.

2. Record on Appeal Vol. 2 at 43.

3. In his examination, Dr. Fambrough found that "[t]he fingers have a full range of motion at this time." 2 ROA at 196. While such a statement