[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Nov. 30, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-12269
Non-Argument Calendar

_____

D. C. Docket No. 08-21398-CV-RLD

MARIE CASTEL,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,
Michael J. Astrue,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 30, 2009)

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Marie Castel, through counsel, appeals the district court's grant of summary

judgment affirming the Social Security Commissioner's denial of supplemental security income ("SSI").[1] Castel raises three arguments: (1) the administrative law judge ("ALJ") erred in deviating from Social Security Ruling ("SSR") 96-8p, *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*,[2] by not considering her limitations in a function-by-function analysis before determining her residual functional capacity ("RFC"); (2) the ALJ erred in violating SSR 02-1p, *Titles II and XVI: Evaluation of Obesity*,[3] by not properly taking her obesity into account; and (3) substantial evidence does not support the ALJ's adverse credibility determination regarding her testimony.

This Court's review is "limited to an inquiry into whether there is substantial evidence to support the findings of the [ALJ], and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam). Our standard of review of a Social Security case is "demarcated by a deferential reconsideration of the findings of fact and an exacting examination of the conclusions of law." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Secretary's factual findings are conclusive if "supported by

---

[1]A claimant is entitled to judicial review of a final ruling from the Commissioner of Social Security. 42 U.S.C. § 1383(c)(3).

[2]61 Fed. Reg. 34474 (July 2, 1996).

[3]67 Fed. Reg. 57859 (Sept. 12, 2002).

substantial evidence," but the "Secretary's conclusions of law, including applicable review standards, are not presumed valid." *Id.* at 1529 (quotation and citations omitted). Substantial evidence is "more than a scintilla, but less than a preponderance," in that "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* at 1529 (quotation and citation omitted). The district court's determination on whether there was substantial evidence to support the ALJ's decision is reviewed *de novo*. *Wilson*, 284 F.3d at 1221

Castel applied for SSI pursuant to 42 U.S.C. § 1383(c) on November 9, 2004 and was denied benefits. Castel then appealed for a hearing in front of an ALJ. At the time of the hearing Castel was a fifty-eight-year-old woman who spoke Creole and limited English. Castel was five foot one inch tall and weighed 206 pounds. Castel complained of the following impairments: severe mitral regurgitation, moderate left atrial enlargement, decreased left ventricular relaxation, left ventricular hypertrophy, cardiomyopathy, congestive heart failure, palpitations, osteoarthritis, leg pain, calcaneal spurs in her left foot, pain in her left foot, swollen feet and hands, wrist pain, constantly swollen arms and thighs, left thigh tenderness, lower back pain, right shoulder pain, obesity, uncontrolled hypertension, pitting edema, and a few other minor complaints. Castel had

previously held jobs as a seamstress and at a laundromat until 2002, but claimed that she was no longer able to hold these jobs because of her physical ailments.

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that she is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At the first step, the claimant must prove that she has not engaged in substantial gainful activity. At the second step, she must prove that she has an impairment or combination of impairments that is severe. If, at the third step, she proves that her impairment or combination of impairments meets or equals a listed impairment, she is automatically found disabled regardless of age, education, or work experience. If she cannot prevail at the third step, she must proceed to the fourth step where she must prove that she is unable to perform her past relevant work. If the claimant is unable to do past relevant work, the examiner proceeds to the fifth and final step of the evaluation process to determine whether, in light of residual functional capacity, age, education, and work experience, the claimant can perform other work. *Id.*; *see also Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

The ALJ found, and neither party disputes, that Castel had not engaged in substantial gainful employment since the application date of November 9, 2004. The ALJ proceeded to the second step and found that Castel had several severe

4

impairments: obesity, palpitations, hypertension, left upper extremity pain, left lower extremity pain, and left plantar neuroma. The ALJ determined that Castel did not suffer from any mental impairments that rose to the level of severe impairments. At the third step, Castel's impairments or combinations of impairments did not meet or equal one of the listed impairments proscribed by the Social Security Administration. *See* 20 C.F.R. pt. 404 subpt. p app. 1. The ALJ then moved on to step four and determined that Castel had the RFC to "lift and carry fifty pounds occasionally and twenty-five pounds frequently" and "stand or walk for at least six hours per eight-hour workday and . . . sit for at least six hours per workday." (Doc. 8-2 at 23). Based on this RFC, the ALJ found that Castel was capable of performing past relevant work.[4]

## I.

### The ALJ Completed a Proper Function-By-Function Analysis

Castel argues that the ALJ reached an RFC determination without going through a function-by-function analysis. Specifically, Castel claims that the ALJ did not perform the function-by-function analysis to determine Castel's ability to handle strength demands. This argument is unfounded.

---

[4]The ALJ did not need to discuss the fifth step because Castel was deemed capable of past relevant work, and thus the analysis ends at the fourth step.

The ALJ made a determination of Castel's RFC at step four of the function-by-function analysis. The ALJ considered two disability examiners' reports, Castel's testimony, and two Disability Determination Services' ("DDS") reports in arriving at Castel's RFC. *See* SSR 96-8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996) (advising that the RFC assessment must consider all relevant evidence, including medical history, medical evaluations, daily activities, and lay evidence). The ALJ ultimately decided that Castel was capable of medium exertion level work and thus was capable of performing past relevant work.

An exam by Dr. Adam, a disability examiner, reflected Castel's ability to walk and work with her hands. Dr. Cusco, also a disability examiner, prepared a report that discussed Castel's work abilities, such as walking, lifting, grabbing, and manipulating. One DDS report found Castel capable of a full range of light exertion level work while another DDS report found her capable of medium exertion level work.[5]

Dr. Adam found that Castel did not have any back tenderness, that she had full grip strength with normal fine manipulation, and that she was able to walk

---

[5]The ALJ referred to two DDS doctor reports finding Castel capable of medium exertion level work. However, the two reports the ALJ refers to are actually a handwritten and typed version of the same report. There is also a dispute over whether the report was prepared and signed by a doctor or a non-physician administrator. Castel argues that this discrepancy is reversible error, but as we will discuss later it was a harmless error on the part of the ALJ.

without assistance. Dr. Cusco reported very similar findings, most importantly that Castel was able to walk without assistance. Further, Castel testified that she lived alone, cooked, did laundry, walked outside, and went to church. These findings are consistent with the ALJ's final determination that Castel is capable of performing the duties of a seamstress or employee of a laundromat.

We do not require the ALJ to "specifically refer to every piece of evidence in his decision," so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam). The ALJ found that the medium level work determination was consistent with the medical evidence and found Castel's RFC to be at a medium level of work. The ALJ performed a proper RFC function analysis, based on substantial evidence, and we shall defer to his conclusions.

## II.

## The ALJ Properly Considered Castel's Obesity When Determining Her RFC

Castel argues that the ALJ erred in not properly taking her obesity into account in determining her RFC. Specifically, Castel asserts that the ALJ violated SSR 02-1p[6] because (1) the ALJ failed to consider her left lower extremity pain

---

[6]The relevant portions state:
"An assessment should also be made of the effect obesity has upon the

7

and left plantar neuroma in combination with her obesity; and (2) even though the ALJ found her obesity to be a severe impairment, he did not specify any resulting functional limitations from such impairment.

Castel's contentions are not supported by the record. The record reflects that the ALJ considered Castel's obesity.[7] Further, the ALJ made specific reference to SSR 02-1p in his ruling.[8] The ALJ determined that Castel's obesity was a severe impairment. However, the ALJ's decision reflects that Castel's obesity was ultimately determined not to result in any specific functional limitations.[9]

<hr>

individual's ability to perform routine movement and necessary physical activity within the work environment. . . As explained in SSR 96-8p . . . our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . .

. . . .

The combined effects of obesity with other impairments may be greater than might be expected without obesity. . . .

. . . .

. . . When we identify obesity as a medically determinable impairment . . . , we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments we identify."

67 Fed. Reg. 57859, 57862–63 (Sept. 12, 2002).

[7]The ALJ noted that Drs. Adam and Cusco found Castel to be more than two hundred pounds at a height of five foot one inch. (Doc. 8-2 at 22).

[8]The ALJ stated in his order that, "I have taken the claimant's obesity into account in formulating this residual functional capacity in terms of her limitations and restrictions arising there from in accordance with Social Security Ruling 02-1p." (Doc. 8-2 at 23).

[9]It is also worth noting that Castel weighed around two hundred pounds when she last worked in a laundromat in 2002. (*See* Doc. 8-2 at 111). The ALJ did not explicitly state this in his decision but Castel's ability to perform her work duties at her current weight supports the

8

**The ALJ Made a Proper Adverse Credibility
<u>Determination in Reference to Castel's Complaints of Pain</u>**

We apply a three-part pain standard when a claimant seeks to establish disability through her own testimony regarding pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). The pain standard requires:

> (1) evidence of an underlying medical condition and either (2)
> objective medical evidence that confirms the severity of the alleged
> pain arising from that condition or (3) that the objectively determined
> medical condition is of such a severity that it can be reasonably
> expected to give rise to the alleged pain.

*Id.* The ALJ "must consider a claimant's subjective testimony of pain" if the claimant satisfies the three-part test. *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam). Castel's "subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Holt*, 921 F. 2d at 1223 (citation omitted).

If the ALJ finds that the testimony of the claimant is not credible the ALJ must articulate the reasons for finding a lack of credibility. *Foote*, 67 F.3d at

ALJ's finding that obesity did not substantially affect her functional capacity.

1561–62. The ALJ is not required to explicitly conduct a credibility analysis, but the reasons for finding a lack of credibility must be clear enough that they are obvious to a reviewing court. *Id.* at 1562 (citation omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* at 1562 (citation omitted).

Castel argues that substantial evidence does not support the ALJ's adverse credibility finding regarding her testimony. First, Castel argues that her complaints of pain and functional limitations are consistent with each other and with the record. Castel next asserts that the ALJ erred in relying on a DDS report that was possibly prepared by a non-physician. Further, Castel argues that the ALJ erred by referring to the questionable DDS report as two distinct reports, when in fact it was a handwritten and typed version of the same report.

The ALJ's decision establishes a clear record of the reasons why Castel's testimony was not credible. As the ALJ properly noted, Castel lives alone, cooks, does her laundry at the laundromat (similar to the functions of her previous job), attends church, and reads the Bible. *See Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) (per curiam) (a claimant's daily activities may be considered in evaluating complaints of disabling pain). Furthermore, the ALJ found that these activities conflicted with Castel's claims regarding the limitations resulting from

10

her impairments. The ALJ also found that Castel had sought medical treatment very few times since she filed her claim. *See Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984) (per curiam) (finding that a claimant's failure to seek medical treatment is relevant in assessing credibility). The ALJ also determined that the reports from the disability examiners conflicted with Castel's testimony concerning her work abilities.[10] The ALJ even explicitly stated in the decision that he did not find Castel entirely credible.

Castel contends that the ALJ erred in determining her RFC because he relied on what he believed were two DDS reports concerning Castel's RFC. It is clear that the two reports the ALJ refers to are in fact one report, with the only difference being that one version is handwritten and the other is typed. The signature at the end of the handwritten DDS report looks like the letter "M." Castel correctly argues that this signature resembles the signature of Deborah Tyson from a February 15, 2005 form. Deborah Tyson is a single decision-maker ("SDM"), not a doctor, and so Castel argues that the ALJ's reliance on a report prepared by an SDM is error. The Appellee argues that the "M" signature on the DDS report is consistent with Dr. Muth.[11] The Appellee also notes that other documents refer to

---

[10]The reports from Drs. Adam and Cusco indicate that Castel is capable of a work ability level above that to which she testified at the hearing. (Doc. 8-2 at 22).

[11]Dr. Muth performs disability examinations and is therefore qualified to complete DDS reports.

a functional capacity evaluation done by Dr. Muth around the same time as the DDS report in question was signed.

This Court does not need to determine who signed the DDS report in question. The ALJ references the DDS report at issue in two sentences, but dedicates two paragraphs to the reports of Drs. Adam and Cusco. The record does not reflect that the ALJ placed great weight on the DDS reports, as Castel contends. Rather, the evaluations by Drs. Adam and Cusco seem to have been the primary basis for the ALJ's decision. The DDS report merely confirmed this objective medical evidence. This Court does not find any error caused by the ALJ's reference to this DDS report, and to the extent that one could argue that the ALJ erred, the error would not rise above the level of harmless error.

The ALJ's finding that Castel's testimony was not credible was adequately articulated and properly supported by substantial evidence. Substantial evidence supports the ALJ's adverse credibility determination, in that (1) the ALJ proffered specific and adequate reasons for discounting her testimony; and (2) medical records from other physicians indicated that Castel's subjective complaints were improbable, even if the ALJ mistakenly relied on an RFC assessment that might have been completed by a non-physician.

## Conclusion

12

Based on a review of the record and the parties' briefs, we find that the ALJ made a reasoned decision, supported by substantial evidence, and find no error. The district court's order of summary judgment is affirmed.

**AFFIRMED.**