[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15293
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 6, 2010
JOHN LEY
CLERK

D. C. Docket No. 09-01453-CV-5-VEH

KATHLEEN M. LEITER,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,
Michael J. Astrue,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(May 6, 2010)

Before EDMONDSON, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

Kathleen M. Leiter appeals the district court's order affirming the Social Security Administration's ("agency") denial of her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") based on a determination that there are other jobs existing in the national economy that Leiter can perform. Specifically, Leiter argues that: (i) the Administrative Law Judge ("ALJ") erred in finding that her subjective complaints of pain were not credible; (ii) the ALJ lacked good cause to reject the opinion of Dr. Robert Nesbitt, a treating physician; (iii) the ALJ did not adequately develop the record for failure to consider the side effects of her pain medications; (iv) the Appeals Council erred by failing to remand her case to the ALJ for consideration of a newly-submitted medical report from Dr. James Flanagan. After consideration of the record and the parties' briefs, we affirm.

## STANDARD OF REVIEW

"In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citation omitted). "However, we review the resulting decision only to determine whether it is supported by substantial evidence." *Id*. (citation omitted). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person

2

would accept as adequate to support a conclusion." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (citation and quotation marks omitted). We will "not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [agency]." *Id.* (citation omitted). "If the [agency's] decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." *Id.* (citation omitted). However, there is no presumption that the agency "followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Id.* (citation omitted).

## DISCUSSION

The Social Security regulations establish a five-step, sequential evaluation process for determining whether a claimant is disabled for both SSI and DIB claims. *Moore*, 405 F.3d at 1211; 20 C.F.R. §§ 404.1520(a) (five-step determination for DIB) and 416.920(a) (five-step determination for SSI). The ALJ does not proceed to the next step if an ALJ finds a claimant disabled or not disabled at any given step. *Id*.; §§ 404.1520(a)(4) &416.920(a)(4). Under the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id*.; §§ 404.1520(a)(4)(i),(b) & 416.920(a)(4)(i),(b). At the second step, the ALJ is required to determine whether the impairment or combination of impairments for which the claimant allegedly suffers is severe. *Id*.;

3

§§ 404. 1520(a)(4)(ii),(c) & 416.920(a)(4)(ii),(c).  If there is no severe impairment, then the claimant is considered not disabled, and the claim is denied.  At the third step, the ALJ must decide whether the claimant's severe impairments are equal to a listed impairment.  *Id*.; §§ 404.1520(a)(4)(iii),(d) & 416.920(a)(4)(iii),(d).  If the impairment meets or is medically equal to a listed impairment, then the claimant is conclusively presumed disabled.  *Id*.; §§ 404.1520(d) & 461.920(d).

If the ALJ finds that the claimant has severe impairments that do not meet or are equal to a listed impairment, the ALJ will determine, at step four, whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work.  §§ 404. 1520(a)(4)(iv),(e)–(f) & 416.920(a)(4)(iv),(e)–(f).  "The [RFC] is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citation omitted).  If the claimant cannot perform her past relevant work, the ALJ must then determine, at step five, whether the claimant's RFC permits her to perform other work that exists in the national economy.  §§ 20 C.F.R. 404.1520(a)(v),(g) & 416.920(a)(v),(g).

The sequential evaluation process places a "very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work."  *Moore*, 405 F.3d at 1211.  "An individual claiming Social

4

Security disability benefits must prove that she is disabled." *Id*. (citation omitted). Thus, the burden is on the claimant to introduce evidence to prove that she is disabled. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam).

The ALJ found that Leiter was not disabled at step five of the sequential evaluation process. The ALJ concluded that Leiter was unable to return to past relevant work, however, there are other jobs in the national economy that Leiter could perform such as a ticket seller, office helper, or a copy machine operator. Leiter argues that the ALJ's decision is not based on substantial evidence on four grounds. After review of each contention, we find that the ALJ's decision was supported by substantial evidence in the record.

I.

First, Leiter asserts that the ALJ's credibility determination is not supported by substantial evidence.

In cases where a claimant attempts to establish disability through his or her own testimony concerning pain or other subjective systems, we apply a three-part "pain standard." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). This standard requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical

5

condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Id.*

When evaluating a claimant's subjective symptoms, the ALJ must consider the following factors: (i) the claimant's "daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief . . . of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms." 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3); *see also Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984) (per curiam).

"Subjective pain testimony that is supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the claimant complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citations omitted). However, if the ALJ decides not to credit a claimant's subjective complaints as to her pain, "he must articulate explicit and adequate reasons for doing so." *Holt*, 921 F.2d at 1223. "Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true." *Id.* (citation

6

omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam) (citation omitted).

We reject Leiter's claim that the ALJ erred by declining to credit her subjective testimony concerning her pain, and that his decision was not supported by substantial evidence. In this case, the ALJ made a specific reference to the pain standard, stating that he must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence pursuant to 20 C.F.R. §§ 404 404.1529(c) and 416.929(c). Here, the ALJ found that Leiter's subjective testimony regarding the frequency and intensity of her symptoms could not be fully credited because it was inconsistent with her testimony about her daily activities and with the medical evidence of record. Doc. 9-1 at 8. The ALJ explicitly considered Leiter's subjective complaints and indicated the following:

> The claimant alleges that she has such severe pain, that she unable to work an 8-hour workday. The claimant reported in her Disability Report that she is in "constant severe pain when trying to do simple tasks, cannot stand, sit, lay or be in any position long." (Exhibit 4E). However, the claimant works up to 2 days a week as a substitute teacher. She also works in a "family club" where she takes money at the door.

*Id.*

The ALJ also specifically listed other inconsistencies in Leiter's subjective

7

complaints while evaluating her daily activities. *Id.* at 9. Based on these daily activities, the ALJ expressly found that Leiter's subjective complaints were "not consistent" with her assertion that she was unable "to do even simple tasks." *Id.* Consequently, the ALJ concluded that Leiter's statements concerning the intensity, presistence, and limiting effects were not entirely credible. *Id.* Because the ALJ clearly articulated explicit reasons for rejecting Leiter's subjective complaints, we find that the ALJ's credibility determination was supported by substantial evidence.

## II.

Next, Leiter argues that the ALJ erred by rejecting the opinion of Dr. Nesbitt, a treating physician, without the required a showing of good cause. After review of the record, we find that the ALJ did not commit reversible error on this issue.

The opinion of an examining physician is generally entitled to more weight than non-treating medical opinions. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted). Nevertheless, an ALJ may reject any medical opinion if the evidence supports a contrary finding. *Id.* "The opinion of a treating physician . . . must be given substantial weight unless good cause is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)

(citation and quotation marks omitted). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. at 1241 (citation omitted). If the ALJ decides to "disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* (citation omitted). Thus, an ALJ does not commit reversible error when he articulates specific reasons for declining to give the treating physician's opinion controlling weight, and these findings were supported by substantial evidence. *See Moore*, 405 F.3d at 1212.

The record demonstrates that the relevant aspects of Dr. Nesbitt's opinion about the severity of Leiter's pain and her physical limitations were contradicted by the bulk of the medical evidence and Leiter's own statements concerning her daily activities. Further, the ALJ articulated specific reasons for affording little weight to Dr. Nesbitt's opinion and stated:

> Doctor Nesbit[sic] administered the claimant ESI's,[1] but he performed no objective medical testing on the claimant. His opinion that the claimant needs to elevate her legs during the day is unsupported by the medical evidence. None of the medical evidence reveals that the claimant needs to elevate her legs during the day. In fact, none of the medical evidence indicates that the claimant was told she needed to do this. Doctor Nesbitt also opined that the claimant could sit, stand, or 0 work hours of an 8-hour workday. The claimant sat during the

---

[1]Epidural Steroid Injection

hearing, getting up to stretch occasionally. She has walked for 1 hour on her treadmill. She rode a bike 12 miles. She cleaned out her kitchen cabinets. She works two part-time jobs. His opinion that the claimant would miss more than 4 days of work per month and has moderately severe pain is based upon the claimant's subjective complaints. It is not consistent with the medical evidence of record.

Doc. 9-1 at 9.

The inconsistencies between Leiter's own testimony regarding her daily activities and Dr. Nesbitt's opinion illustrates that the treating physician's opinion was not bolstered by the evidence.

Furthermore, the ALJ is not required to give a treating physician's opinion considerable weight if the claimant's own testimony regarding her daily activities contradicts that opinion. *See Phillips*, 357 F.3d at 1241 (finding that an ALJ's decision to give a treating physician's opinion little weight was supported by substantial evidence because the claimant's admissions concerning her activities were at odds with the treating physician's assessment). Because the ALJ articulated specific reasons for declining to give the treating physician's opinion controlling weight, and these findings were supported by substantial evidence in the record, we hold that the ALJ had good cause to reject this opinion.

III.

Additionally, Leiter contends that the ALJ failed to adequately develop the record. In particular, Leiter argues that the ALJ committed reversible error when

10

he made no determination with regard to the side effects of her pain medication. This argument is meritless.

The ALJ is responsible for developing a full and fair record. *Ellison*, 355 F.3d at 1276 (citation omitted). This obligation does not relieve the claimant of the burden of proving that she is disabled. *Id.* "It is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability." *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981). Therefore, when there is evidence in the record that the claimant is taking medications, and it is conceivable that the "side effects of medication could render a claimant disabled or at least contribute to a disability," the ALJ has an obligation to elicit testimony or make findings on the effects of the medications on the ability to work as part of the overall duty to fully develop the record. *Id.* (holding that the ALJ failed to fully develop the record after the claimant testified that she was taking eight different prescription medications). Because Leiter was represented by counsel, the ALJ's duty to develop the record was not heightened. *Cf. Ellison*, 355 F.3d at 1276.

First, the record indicates that during the ALJ hearing, the ALJ elicited detailed testimony from Leiter regarding the side effects of each pain medication Leiter was prescribed. Tr. 27–30. When the ALJ asked Leiter if she was taking

any pain medication Leiter said, "no" and that she was taking an over-the-counter drug. Tr. 29–30. Leiter testified that she discontinued taking the prescribed pain medication when she had to perform tasks because they make her drowsy. Tr. 29. Leiter further explained that rather than taking her prescription drugs, she only takes Motrin when she has to function because, according to her, it "eases the pain enough to where I can somewhat function, but it does not have any effects of making me drowsy, or loopy." Tr. 30.

The ALJ committed no error for declining to discuss in his decision side effects of medications that Leiter did not take or had discontinued taking. The record supports Leiter's testimony that the only medication that she took regularly was over-the-counter Motrin, a fact that the ALJ discussed in his decision, albeit briefly. Leiter, however, complained that the Motrin possibly caused stomach problems. To the extent that Motrin produced a potential side effect of stomach problems, neither Leiter nor medical sources alleged that stomach problems limited her ability to work or otherwise function, and so it was not conceivable that this side effect would render Leiter disabled or contribute to her disability. Therefore, the ALJ adequately developed the record by including a brief discussion of the medicatios Leiter was taking and her reasons for doing so. *See Ellison*, 355 F.3d at 1276.

12

IV.

Finally, Leiter argues that the district court erred in failing to remand her claim to the ALJ despite the submission of new and material evidence based on Dr. Flanagan's report. This argument is unpersuasive.

We review *de novo* whether remand to the agency is necessary. *Hyde v. Bowen*, 823 F.2d 456, 458–59 (11th Cir. 1987) (citation omitted). A claimant is entitled to remand for consideration of newly-discovered evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Thus, the claimant must show that (1) the evidence is new and noncumulative; "(2) the evidence is material such that a reasonable probability exists that the new evidence would change the administrative result;" and (3) there is good cause for the claimant's failure to submit the evidence at the appropriate administrative level." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

For evidence to be new and noncumulative, it must relate to the time period on or before the date of the ALJ's decision. *See* 20 C.F.R. 404.970(b). Evidence of deterioration of a previously-considered condition may subsequently entitle a claimant to benefit in a new application, but it is not probative of whether a person was disabled during the specific period under review. *See Wilson v. Apfel*, 179

13

F.3d 1276, 1279 (11th Cir. 1999) (per curiam) (holding that a doctor's opinion one year after the ALJ decision was not probative to any issue on appeal). By contrast, evidence of a condition that existed prior to the ALJ hearing, but was not discovered until after the ALJ hearing, is new and noncumulative. *See Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218–19 (11th Cir. 2001) (holding that remand was warranted because a doctor discovered a herniated disk after the ALJ decision).

In the instant case, Leiter submitted a post-hearing report from Dr. Flanagan, which stated that MRIs showed signs of bilateral Avascular Necrosis ("AVN") with bone collapse. Vol. II, Tab-9 at 372. The evidence of AVN was previously documented: CT scans of Leiter's femoral heads shortly after her accident showed that she had potential AVN. Vol. I, Tab-B at 150–51. Dr. David Dueland later confirmed that Leiter did indeed have AVN, but that it was asymptomatic. Vol. II, Tab-9 at 244. Dr. Flanagan, by contrast, observed over two years later, that Leiter's AVN had "worsened." Vol. II, Tab-9 at 372. This evidence indicates that Dr. Flanagan's findings did not reveal an undiscovered, preexisting condition, but rather revealed that Leiter's AVN had deteriorated since its previous documentation. *See Wilson*, 179 F.3d at 1279. Therefore, the evidence was neither new nor noncumulative. *Id.*

14

Furthermore, even if this evidence was considered, Dr. Flanagan reported that Leiter had full hip strength and advised that she could continue with her present activities until she was too uncomfortable. Vol. II, Tab-9 at 371–72. At that point, they would discuss surgery. Vol. II, Tab-9 at 371–72. The record is bereft of any medical evidence corroborating Leiter's contention that she only postponed surgery for insurance reasons. Vol. II, Tab-9 at 369–370. Therefore, no reasonable probability existed that this new evidence would have changed the outcome of proceedings. *See Falge*, 150 F.3d at 1323. Because the evidence was neither new and noncumulative nor outcome-determinative, the Appeals Council did not err in declining to remand Leiter's case to consider Dr. Flanagan's report. Accordingly, we hold that the Appeals Council did not err in declining to remand the case to the ALJ to consider the newly-submitted evidence.

**AFFIRMED.**