[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14169
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-00132-WTH-CAS

WILLIAM EVERETT BRIGHTMON,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(August 2, 2018)

Before MARTIN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

William Everett Brightmon appeals the district court's order affirming the Commissioner of the Social Security Administration's (the "Commissioner") decision to deny his applications for supplemental-security income and disability-insurance benefits (collectively, "disability benefits").  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  On appeal, Brightmon argues that the Administrative Law Judge's ("ALJ") findings that he had a high-school education and the residual functional capacity ("RFC") to perform a full range of work at the medium exertional level were not supported by substantial evidence.

## I.  Background

Brightmon alleges disability as of June 25, 2013, based on a combination of mental and physical impairments, including osteoarthritis, schizoaffective disorder, and substance abuse.[1]  He was 59 at the alleged onset date and 62 by the time of the hearing before the ALJ in April 2015.  In the parlance of the Social Security Administration, he was of "advanced age" at onset and "closely approaching retirement age" by the time of the hearing.  *See* 20 C.F.R. § 404.1563(d), (e).  Brightmon has a high-school education and past work experience as a laborer.

*A.     Medical Records and Opinion Evidence*

---

[1] Brightmon originally claimed a disability-onset date in December 2011, which he later amended to June 2013.

2

The medical evidence regarding Brightmon's physical impairments—which are the sole focus of this appeal—reflects that he has been treated for, among other issues, pain in his neck, back, knees, and shoulder, and right-arm weakness. Medical records through the end of 2013 are sparse and do not show any significant problems. An x-ray taken in June 2013 showed mild degenerative change in the thoracic and cervical spine. And Brightmon reported chronic pain in his knees in August 2013. Otherwise, his exams were fairly normal. In October 2013, for example, he denied back pain or muscle aches to Dr. John Desrochers, and the doctor's findings were benign.

In December 2013, the state disability agency denied reconsideration of its denial of Brightmon's application for disability benefits. As part of that denial, a state-agency medical consultant reviewed Brightmon's medical records and offered an RFC assessment, opining that he could perform medium work. The medical consultant found that he could lift 50 pounds occasionally and 25 pounds frequently and could stand, walk, and sit for six hours each in an eight-hour workday.

Beginning with the 2015 records, the medical records reflect increased treatment for Brightmon's neck, back, arm, and knee problems. In February 2015, a doctor noted that Brightmon had severe degenerative joint disease in his cervical

3

neck bones.[2]  In March 2015, he was diagnosed with right-arm weakness, chronic neck pain, lumbago, degenerative arthritis of the cervical spine, and chronic knee pain.  An x-ray taken in April 2015 revealed moderate to severe degenerative joint disease in his cervical spine.

After the April 2015 hearing, the ALJ ordered a physical consultative examination, which Dr. Robert Greenberg conducted in June 2015.  Dr. Greenberg's examination found decreased range of motion of the cervical and lumbar spine, both hips, and right wrist, pain on motion of the cervical and lumbar spine, and full range of motion of the knees and all other extremities.  Other findings included straight-leg-raising pain for both legs; normal gait and station; no need for a cane or other assistive ambulatory device; difficulty tandem walking and walking on heels and toes; inability to stoop; decreased right grip strength (4/5); and no difficulty buttoning and unbuttoning his clothing.  Dr. Greenberg assessed Brightmon as having "[o]steoarthritis of the cervical spine, lumbar spine, right wrist, both hips, and both knees."  Dr. Greenberg also noted that Brightmon had experienced complications from recent esophageal surgery, resulting in the placement of a gastronomy tube ("G-tube") in his mid-abdomen to deliver nutrition

---

[2] The treatment notes do not specify the basis for this finding, but it appears that the doctor performed a CT scan of Brightmon's neck, along with x-rays of his chest.

4

directly to the stomach.  Brightmon had lost over 25 pounds since the surgery one month earlier.

Dr. Greenberg completed a medical-source statement of ability to do work-related activities and an RFC evaluation.  In both assessments, Dr. Greenberg opined that Brightmon's impairments prevented him from performing work-related activities that required heavy exertion or prolonged standing, walking, or bending.

In August 2015, Brightmon was treated for neck pain with radiating arm pain, right-arm weakness, and ongoing low-back and bilateral buttocks pain.  Dr. Steven Bailey found tenderness and pain on motion in the cervical and lumbosacral spine, and tenderness in the buttocks and hips.  Dr. Bailey assessed Brightmon as having clear "symptoms of cervical radiculopathy as well as chronic low-back pain with possible neurogenic claudication," and he ordered magnetic-resonance-imaging scans ("MRIs") of the cervical and lumbar spine.  The MRIs, taken in September 2015, showed, among other problems, foraminal compression bilaterally in the mild range in the cervical spine and "some significant degenerative disc disease and bilateral facet arthropathy" in the lumbar spine.  At a follow-up visit in October 2015, Dr. Bailey's physician assistant found diminished range of motion of the cervical spine and mild tenderness in the lower lumbar spine.

In September 2015, Brightmon was treated by Dr. Jerry Costain for chronic pain in his neck, lower back, and right shoulder.  At the initial visit, Brightmon had right-shoulder tenderness with limited range of motion but full strength. Brightmon was seen again two weeks later.  The notes for the "musculoskeletal" portion of the physical exam on that date state generally, "Normal range of motion. He exhibits tenderness.  He exhibits no edema."  The notes then go on to describe in more detail the exams of Brightmon's right shoulder and knees.  Brightmon no longer had right-shoulder tenderness.  His right knee had mild joint effusion with full range of motion and full strength.  The treatment notes do not indicate that a spinal exam was performed.   Dr. Costain prescribed pain medication and recommended trying physical therapy.

B.    *ALJ's Unfavorable Decision*

In December 2015, the ALJ issued an unfavorable decision finding Brightmon not disabled.  The ALJ determined that, despite his physical and mental impairments, Brightmon was able to perform a full range of work at the medium exertional level with non-exertional limitations on the complexity of the tasks involved and interaction with others.  Relying on the testimony of a vocational expert, the ALJ found that Brightmon could not perform his past work as a laborer but that he could transition to other work in the national economy.

6

In concluding that Brightmon was capable of performing medium work, the ALJ reviewed the medical evidence and found that, while the evidence was consistent with multilevel degenerative disc disease of the cervical and lumbar spine, objective clinical findings were "minimal" and treatment was conservative. The ALJ gave "little weight" to Dr. Greenberg's findings of decreased range of motion, opining "that the claimant was recovering from recent abdominal surgery which likely reduced his ability to perform full range of motion." With regard to the findings of the other doctors who examined Brightmon, the ALJ described Dr. Costain's findings as "fairly benign, showing a full range of motion of the spine with full strength, full range of motion of the knee with full strength, and no tenderness of the shoulders." As for Dr. Bailey, the ALJ stated that his findings "fail[ed] to show more than some cervical and lumbosacral spine, bilateral hip, and bilateral buttock tenderness." The ALJ also noted that Brightmon had normal muscle bulk and tone, normal strength, normal gait and stance, and no more than minimal treatment for his impairments. Overall, the ALJ found that "the lack of objective medical findings and the lack of treatment suggest[] that his musculoskeletal symptoms are not as limiting as alleged and would not prevent the performance of medium exertional work."

Regarding the opinion evidence, the ALJ gave Dr. Greenberg's assessed limitations "little weight" because they were not consistent with his own evaluation

or with the objective medical evidence as a whole.  Again, the ALJ discredited Dr. Greenberg's findings of decreased range of motion because, in the ALJ's view, they were more likely due to Brightmon's recent surgery.  The only other opinion evidence came from a state-agency medical consultant, who evaluated Brightmon's RFC based on the record as of December 2013 and opined that he was capable of performing a full range of medium work.  The ALJ gave "great weight" to this opinion, stating that it was consistent with the medical record as a whole.

The Appeals Council denied review of the ALJ's decision, and the district court affirmed the ALJ's decision in federal district court.  Brightmon now appeals to this Court, arguing primarily that substantial evidence does not support the ALJ's finding that he was capable of full-time medium work.  We have jurisdiction under 42 U.S.C. § 405(g), and we now vacate and remand.

## II.  Discussion

"In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  We must

8

affirm a decision that is supported by substantial evidence even if the evidence preponderates against the agency's findings. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007). And we may not reweigh the evidence, decide the facts anew, or substitute our judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178.

Though our review is deferential, "we do not act as automatons," and, instead, "[w]e must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). A decision is not supported by substantial evidence if the ALJ "reached the result that [he] did by focusing upon one aspect of the evidence and ignoring other parts of the record." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). The ALJ must state with at least some measure of clarity the grounds for her decision, and we will not affirm "simply because some rationale might have supported the ALJ's conclusions." *Winschel*, 631 F.3d at 1179.

Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). Regulations outline a five-step, sequential evaluation process ALJs must use to determine whether a claimant is disabled: (1) whether he is currently engaged in substantial gainful

9

activity; (2) whether he has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of a specified impairment in the Listing of Impairments; (4) whether he can perform his past relevant work despite his impairments; and (5) whether he can perform other work found in the national economy. *Winschel*, 631 F.3d at 1178; *see* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

At step four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC is an assessment of a claimant's ability to do work despite his impairments. *Lewis*, 125 F.3d at 1440. Relevant evidence includes a claimant's medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The claimant's RFC also comes into play at step five, when "the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." *Winschel*, 631 F.3d at 1180. An ALJ may make this determination either by obtaining the testimony of a vocational expert or by applying the Medical-Vocational Guidelines (the "grids"). *Id.* The grids direct a finding of "disabled" or "not disabled" based on a combination of vocational factors, including a claimant's maximum exertion level, age, education,

10

and previous work experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. As relevant here, the grids direct a finding of not disabled for an individual closely approaching retirement age (aged 60 or older) who is limited to medium work, has a high-school education, and lacks previous or skilled work experience. 20 C.F.R. pt. 404, subpt. P, app. 2 § 203.06. The same individual who is limited to light work instead of medium work, however, is disabled.

Brightmon challenges the sufficiency of the evidence to support the ALJ's finding that he has the RFC to perform medium work. "Medium work requires the ability to lift 50 pounds, to carry 25 pounds frequently, and to do a good deal of walking and standing." *Francis v. Heckler*, 749 F.2d 1562, 1564 (11th Cir. 1985); *see* 20 C.F.R. § 404.1567(d). The Commissioner has elaborated on the definition of "medium work" in Social Security Ruling ("SSR") 83-10, which is binding on ALJs. *See* 20 C.F.R. § 402.35(b)(1). According to SSR 83-10,

> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) . . . In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

SSR 83-10, *available at* 1983 WL 31251.

11

Here, we conclude that substantial evidence does not support the ALJ's finding that Brightmon had the RFC to perform medium work. The ALJ provided two main reasons for his decision: (1) it was consistent with a state-agency medical consultant's RFC determination that Brightmon could perform medium work; and (2) the medical records overall, in the ALJ's view, showed "minimal" objective clinical findings and treatment. Both reasons are problematic.

The RFC assessment of the state-agency medical consultant, to which the ALJ gave "great weight," does not provide substantial evidence on the record as a whole. That is because the medical consultant's assessment was not based on the record as a whole. It was based on the medical record as of December 2013, when the only evidence of note was a June 2013 x-ray showing mild degenerative change in the thoracic and cervical spine.

Since December 2013, however, the medical record is much more developed regarding Brightmon's physical impairments, particularly his lower back and neck problems. He has been diagnosed with osteoarthritis of the cervical spine, lumbar spine, right wrist, both hips, and both knees, as well as with right-arm weakness. He underwent imaging scans, which showed moderate to severe degenerative joint disease in his cervical spine and significant degenerative disc disease and bilateral facet arthropathy in the lumbar spine. And doctors made clinical findings of decreased range of motion in his cervical and lumbar spine and both hips, pain on

12

motion of the cervical and lumbar spine, and tenderness in all of these areas. All of this evidence is materially relevant to whether Brightmon can perform the "considerable lifting" and "frequent bending-stooping" usually required for the full range of medium work. *See* SSR 83-10, *available at* 1983 WL 31251.

However, no expert apart from Dr. Greenberg, whose opinion the ALJ rejected, expressed an opinion about what these post-December 2013 records meant for Brightmon's ability to work despite his impairments. And the fact that the ALJ's RFC assessment mirrored an RFC assessment given in December 2013, before any of this evidence existed, makes it difficult to say that the ALJ properly "[took] into account and evaluate[d] the record as a whole." *McCruter*, 791 F.2d at 1548.

To be sure, the ALJ discussed some of the evidence that was contrary to the decision, particularly Dr. Greenberg's evaluation, but the ALJ's reasons for rejecting that evidence are problematic as well. In determining that clinical findings overall were minimal, the ALJ gave "little weight" to Dr. Greenberg's findings, following a physical examination, that Brightmon had limited range of motion in his neck, back, hips, and wrist as a result of his osteoarthritis. The ALJ reasoned that the actual cause of the limited range of motion was "likely" his recent surgery, specifically the placement of a G-tube in his mid-abdomen.

Yet it is generally improper for an ALJ to substitute his own judgment for that of a medical expert because, among other reasons, ALJs are not medical experts. *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986); *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). In rejecting Dr. Greenberg's findings, the ALJ did not cite any expert opinion supporting his view as to why Brightmon had limited range of motion, for there is none. Nor did the ALJ explain the medical basis for concluding that the placement of the G-tube would have affected range of motion in his neck, back, hips, or wrist. Notably, the record does not contain records of the surgery. The Commissioner suggests without further elaboration that the ALJ's finding was a matter of "logical[] reason[ing]" or common sense. But the more accurate word for it is "speculation." In short, the ALJ made an impermissible medical judgment unsupported by the record.[3]

What's more, the ALJ disregarded other evidence that was consistent with Dr. Greenberg's findings. *See McCruter*, 791 F.2d at 1548 ("It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence."). The ALJ stated that Dr. Bailey's findings failed to show more than some tenderness in the cervical and lumbar spine, both hips, and

---

[3] The ALJ's rejection of Dr. Greenberg's finding of decreased grip strength is likewise problematic. Dr. Greenberg did not tie that finding to "hand abnormalities," so the absence of hand abnormalities does not contradict the finding, particularly when other evidence indicates that Brightmon experienced right-arm weakness as a complication of his neck injuries. Nor is the fact that Brightmon was capable of fine and gross manipulation inconsistent with decreased grip strength.

14

buttocks.  But Dr. Bailey's treatment notes also indicate pain on motion of the cervical and lumbar spine, symptoms of cervical radiculopathy, and, significantly, diminished range of motion in the cervical spine.  Moreover, the ALJ's description of the overall evidence as showing "minimal" objective findings is difficult to square with imaging scans showing "moderate to severe" osteoarthritis of the cervical spine and "significant" degenerative disc disease and bilateral facet arthropathy in the lumbar spine.[4]

Nor is there any expert evidence in the record, apart from Dr. Greenberg's evaluation, which the ALJ rejected, regarding Brightmon's ability to work after December 2013.  As we have explained above, we agree with the ALJ to the extent that the medical record as of December 2013, when the medical consultant gave the RFC assessment, was fairly benign.  But the medical record has changed substantially since that time.  And no medical expert apart from Dr. Greenberg opined about Brightmon's ability to work despite the physical impairments indicated in the records after December 2013.

For all of these reasons, the ALJ's finding that Brightmon had the RFC to perform a full range of medium work despite his impairments through December

---

[4] While it is true, as the Commissioner urges, that the ALJ is permitted to resolve conflicts in the evidence, *see Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984) (stating that it is the ALJ's responsibility to resolve conflicts in the evidence, including evaluations of a claimant's RFC), the ALJ did not resolve conflicts between clinical findings in reaching the decision.  Rather, the ALJ found the medical evidence as a whole consistent with "minimal objective clinical findings."  That determination, however, is not supported by the record.

2015, when the ALJ issued his decision, is not supported by substantial evidence. That finding was not supported by any expert evidence for the time period after December 2013, and the ALJ reached his decision by improperly disregarding evidence favorable to Brightmon.  We therefore vacate the judgment of the district court and remand with instructions to remand this case to the Commissioner for further proceedings regarding Brightmon's eligibility for disability benefits.[5]

As for ALJ's finding that Brightmon had a high-school education, substantial evidence supports that determination.  Indeed, Brightmon reported that he had that he had earned a high-school diploma and testified that he had attended some junior college.  Even assuming that the ALJ could have found that Brightmon had a "limited" education based on a psychological assessment, the record supports the ALJ's contrary finding.  And Brightmon provides no support for his assertion that graduation from a segregated high school, in and of itself, does not, as a matter of law, qualify as a high-school education under the grids.

**VACATED AND REMANDED**.

---

[5] We express no opinion regarding Brightmon's eligibility for benefits on remand.